2003 SD 75

**Jill Marie ROBERTS, Plaintiff and Appellee,**

v.

**Bart J. ROBERTS, Defendant and Appellant.**

No. 22440.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 2003.

Decided July 2, 2003.

**478**

Sabrina Meierhenry and Jason M. Harris of Danforth, Meierhenry & Meierhenry, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Shelley R. Wieck of Burd & Wieck, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

LOVRIEN, Circuit Judge.

[¶ 1.] Bart Roberts (Bart) appeals a circuit court decision adopting a report by a child support referee recommending an increase in Bart's child support obligation. In calculating the increase, the referee included "pass-through income" from a subchapter S corporation in Bart's income and extrapolated his support to a level above the child support guidelines based upon the pass-through income. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Bart and Jill Roberts (Jill) were divorced in October 1995. The divorce decree incorporated a stipulation and agreement establishing child support and custody. After the divorce, Bart's child support obligation was modified by the parties on numerous occasions.

[¶ 3.] In July 2001, Jill petitioned the court for a modification of Bart's child support. A hearing was held before a child support referee on August 6, 2001.[1] At the time of the hearing, Jill was employed by U.S. Bank as an administrative assistant at a net monthly salary of $1,652 ($22,760 a year). Bart was employed by, and was a minority shareholder in, several corporations.

[¶ 4.] Bart received a monthly salary of $2,935 ($71,762 a year) as an employee of a corporation named Sioux Falls Towers.

---

1. As a result of the hearing, the referee's report recommended an increase in Bart's child support obligation from $1,286 per month to $3,083 per month. Bart objected to the referee's recommendation. The circuit court entered a memorandum decision on November 14, 2001 approving the inclusion of subchapter S income for purposes of calculating child support. However, the court remanded the case back to the referee on the issue of extrapolation above the child support guidelines. A remand hearing was held before the referee. On February 6, 2002, the referee reaffirmed his earlier recommendation to extrapolate Bart's child support obligation to $1,000 above the maximum amount provided for by the guidelines to satisfy the actual needs and standards of living of the children. Bart again objected, but the court adopted the referee's recommendation in a decision dated April 18, 2002.

In addition, as a minority shareholder in several subchapter S corporations, Bart reported corporate income of $163,471 on his federal income tax return. Included in this amount was money Bart received from the subchapter S corporations in order to meet his federal income tax liability on the pass-through corporate income.

[¶ 5.] Bart, as a shareholder in Sioux Falls Towers, had an ownership interest of 24 percent in the corporation.[2] His accountant testified that Bart received numerous distributions from his corporate holdings for the sole purpose of paying his federal income tax liability.[3] Further, the accountant acknowledged that, since these corporations were relatively new, they could not continue to operate if they distributed any income other than what was necessary for shareholders to meet federal income tax liability. Thus, while Bart had to report this corporate income on his federal income tax return, he did not actually receive the income and could not use it for his own support.[4] However, in calcu-

lating Bart's income, the referee included Bart's salary, all of the pass-through income from the subchapter S corporations and the distributions made by the corporations to cover the tax liability on the pass-through income.

[¶ 6.] The referee calculated Bart's monthly income at $18,441.[5] Because Bart and Jill's combined monthly income exceeded the amounts provided for in the child support guidelines, the referee recommended that, in order to provide for the children's actual needs and standards of living, Bart's monthly child support obligation should be extrapolated to $1000 above the maximum amount provided for by the guidelines. Accordingly, the referee recommended that Bart pay $3,083 per month in child support.

## ISSUES

■ [¶ 7.] We identify three issues.[6]

Should pass-through corporate income from a subchapter S corporation includ-

---

2. Sioux Falls Towers owned several subsidiary companies: Intermountain Towers, Sioux Falls Towers South, Anchor Guard and Performance Development Group. Bart's ownership interest in Intermountain Towers was 12 percent; Sioux Falls Towers South was 12 percent; and, Anchor Guard was 24 percent. In Performance Development Group and Dakota Leasing, Bart owned a 6-2/3 percent interest.

3. Bart's accountant, Kathy Helgerson, was also the accountant for the corporations previously noted.

4. Jill claimed that Bart's monthly income was $18,441 (an income in excess of $235,000 a year). That amount reflected the income reported on Bart's tax return from his various subchapter S corporations. Bart claimed that his monthly income was only $2,935 a month ($71,762 a year) which represented his salary from Sioux Falls Tower Specialists. Bart's accountant testified that Bart did not receive any income above his salary for any purpose other than paying his federal income tax liability. She also testified "that the dis-

tributions made to Bart were for tax purposes only" and that Bart had no control over these distributions.

5. Based on the inclusion of the corporate income, the couple's combined monthly income was $20,093.

6. Jill also questions this Court's jurisdiction to decide the issue concerning inclusion of subchapter S income in calculating Bart's child support obligation. She argues that a timely appeal was not filed with respect to this issue after the first hearing in front of the referee. However, Jill fails to provide any authority in support of her argument. In *Matter of Estate of Lingscheit*, 387 N.W.2d 738, 740 (S.D. 1986), we held that orders that do not finally dispose of an entire proceeding are not final judgments within the meaning of SDCL 15-26A-3. Accordingly, we conclude that the issue of whether the subchapter S income should be included in calculating Bart's child support obligation is properly before us.

ed on a parent's federal income tax return be included in calculating gross income for child support purposes when the parent does not actually receive the income and has no control over its distribution?

Should money a parent receives from a corporation to meet the parent's tax liability on pass-through income from the corporation be included in calculating the parent's gross income for child support purposes?

Did the circuit court err by increasing the child support obligation to $1000 above the child support guidelines?

## ANALYSIS AND DECISION

■■■ [¶ 8.] The standard of review in a child support case is well-settled:

Findings of fact are reviewed under the clearly erroneous standard. This Court must be left with a definite and firm conviction that a mistake has been made to overturn a circuit court's findings. *Watson–Wojewski v. Wojewski*, 2000 SD 132, ¶ 13, 617 N.W.2d 666, 669–670 (citing *Billion v. Billion*, 1996 SD 101, ¶ 13, 553 N.W.2d 226, 230). Questions of law are reviewed de novo. *Hendricksen v. Harris*, 1999 SD 130, ¶ 7, 600 N.W.2d 180, 181.

An award of child support will not be disturbed unless the trial court clearly abused its discretion. *Watson–Wojewski*, 2000 SD 132 at ¶ 14, 617 N.W.2d at 670 (citing *Steffens v. Peterson*, 503 N.W.2d 254, 257 (S.D.1993)). Abuse of discretion is defined as "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Billion*, 1996 SD 101 at ¶ 14, 553 N.W.2d at 230. The question is not would this Court have made the same decision, but "whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." *Id.* (citing *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D.1990)).

*Laird v. Laird*, 2002 SD 99, ¶¶ 13–14, 650 N.W.2d 296, 299.

## ISSUE ONE

**[¶ 9.] Should pass-through corporate income from a subchapter S corporation included on a parent's federal income tax return be included in calculating gross income for child support purposes when the parent does not actually receive the income and has no control over its distribution?**

[¶ 10.] We hold that, under the facts of this case, this income should not have been included in calculating gross income for child support purposes.

■■ [¶ 11.] We begin with the basic premise that a parent's obligation to provide necessary support must be in accordance with the means of the parent. *See* SDCL 25–7–6.1.[7] The "means" of a parent include his income, if that income is sufficient to meet the child's needs, or his income and assets if income alone is not sufficient. SDCL 25–7–6.5. A parent's monthly net income is determined as follows:

The monthly net income of each parent shall be determined by the parent's gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:

(1) Compensation paid to an employee for personal services, whether sala-

---

**7.** 7.SDCL 25–7–6.1 states in part: "The parents of a child are jointly and severally obligated for the necessary maintenance, edu-cation and support of the child in accordance with their respective means."

ry, wages, commissions, bonus, or otherwise designated;

(2) Self-employment income including gain, profit, or loss from a business, farm, or profession;

(3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments or insurance contracts;

(4) Interest, dividends, rentals, royalties, or other gain derived from investment of capital assets;

(5) Gain or loss from the sale, trade, or conversion of capital assets;

(6) Unemployment insurance benefits;

(7) Workers' compensation benefits; and

(8) Benefits in lieu of compensation including military pay allowances.

If the income of the parents is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

SDCL 25–7–6.3.

[¶ 12.] We note that, under SDCL 25–7–6.3, in order for an amount to be included in a parent's monthly net income, the amount must first be included in the parent's monthly gross income. For an amount to be included in the parent's monthly gross income, the amount must first be received by the parent. SDCL 25–7–6.3. The requirement that a parent receive an amount before it is included in the parent's monthly gross income is consistent with other provisions of the child support statutes.

[¶ 13.] SDCL 25–7–6.6 allows the court to ignore deductions on a parent's federal income tax return which do not require the expenditure of cash and, thus, increase a parent's disposable income beyond what is shown on the tax return. This statute favors substance rather than form when viewing a parent's federal income tax return. If a deduction on a parent's federal income tax return is, in fact, money available to a parent to support himself, then that amount can be considered in deciding the extent to which the parent should support his child.

[¶ 14.] We also note the provisions of SDCL 25–7–6.7. Child support is based upon monthly net income which is determined by making certain deductions from a parent's monthly gross income.[8] By allowing for these deductions, the legislature has attempted to guarantee that the monthly net income on which child support is based reflects a parent's actual ability to support himself and, thus, his child.

[¶ 15.] In reviewing the various provisions in the child support statutes, we conclude that the statutory scheme is based upon the general principle that the amount of income a parent has to support his child (*i.e.*, the "means" of the parent) is the amount of income the parent has received to support himself.[9] This principle is consistent with the approach urged by the

---

8. Deductions include: income taxes withheld, estimated income taxes payable, FICA taxes, reasonable retirement fund amounts, actual business expenses of an employee not reimbursed by the employer and payments made on other support and maintenance orders. *See* SDCL 25–7–6.7.

9. These provisions include: the requirement that support be set in accordance with the means of the parent (SDCL 25–7–6.1); the definition of monthly gross income as income received by the parent (SDCL 25–7–6.3); the disallowance of certain income tax deductions if they do not require the expenditure of cash (25–7–6.6); and the allowance of various deductions from a parent's monthly gross income (SDCL 25–7–6.7).

South Dakota Commission on Child Support in both its 1985 and 1988 reports to the governor. In its reports, the Commission stressed the importance of establishing guidelines that reflected the parents' ability to pay.[10]

[¶ 16.] With this general principle in mind, we now examine the specific provisions of SDCL 25–7–6.6 at issue here. Did the fact that Sioux Falls Towers' subchapter S income was reported on Bart's federal income tax return mean that, under SDCL 25–7–6.6, that income had to be included in Bart's gross income? We conclude that it did not.

[¶ 17.] We begin by noting that a parent's monthly gross income must be received from those sources identified by SDCL 25–7–6.3. If one of the sources of monthly gross income is income from a business, profession or farming or income from rentals, royalties, estates, trusts or other sources, then SDCL 25–7–6.6 provides a method to calculate this income:

> Gross income from a business, profession, farming, rentals, royalties, estates, trusts or other sources, are the net profits or gain, or net losses shown on any or all schedules filed as part of the parents' federal income tax returns or as part of any federal income tax returns for any business with which he is associated, except that the court may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances, and may further consider the extent to which household expenses,

automobile expenses, and related items are deductible or partially deductible for income tax purposes. In the event a court disallows depreciation, it may consider necessary capital expenditures which enhance the parent's current income for child support purposes.

SDCL 25–7–6.6.

[¶ 18.] We do not read SDCL 25–7–6.6 as establishing a separate category of parental income in addition to the general provisions of SDCL 25–7–6.3. Rather, we believe that the two statutes must be read together. If money received by a parent meets the criteria set by SDCL 26–7–6.3 and is also from certain specific sources identified by SDCL 26–7–6.6, then SDCL 26–7–6.6 provides further rules as to how to calculate that income.

[¶ 19.] Based upon the foregoing authorities we conclude that proper analysis of a parent's income for purposes of determining child support involves the following inquiries: First, did the parent receive the amount in question? Second, was the amount received by the parent from one of the categories identified in SDCL 25–7–6.3? If the amount was actually received by the parent, if it was in a category identified in SDCL 25–7–6.3 and if it was income from a business, profession or farming or from rentals, royalties, estates, trusts or other sources, then it must be treated as provided by SDCL 25–7–6.6.

[¶ 20.] It is undisputed that the corporate pass-through income at issue came within one or more of the categories es-

---

10. The 1985 and 1988 Reports of the South Dakota Commission on Child Support were the basis for the legislature's enactment and revision of South Dakota's child support statutes and provide some guidance as to what the legislature intended. At page 14 in its 1985 report, the Commission noted that, "The guidelines are based on net income of the noncustodial parent and reflect his/her ability to pay." At page 17 in its 1988 report, the Commission noted that, "The Commission felt the net income approach better reflects the actual cash available for the payment of child support and therefore determined to retain the use of the net rather than gross as the basis for determining child support."

tablished by SDCL 25–7–6.3. It is also undisputed that the income was from a business, profession or farming or from rentals, royalties, estates, trusts or other sources. Thus, the income triggered the provisions of SDCL 25–7–6.6. Under SDCL 25–7–6.6, gross income from a business is defined as the net profits or gain either, "shown on any or all schedules filed as part of the parents' federal income tax returns or as part of any federal income tax returns for any business with which [the parent] is associated[.]" The net profits or gains of Sioux Falls Towers were shown on schedules filed as part of Bart's federal income tax return. On that basis, the referee and circuit court included this income in determining Bart's monthly gross income. We conclude, however, that Bart did not "receive" this income as required by SDCL 25–7–6.3 and it should not have been included in his monthly gross income.

[¶ 21.] In the past, we have considered the question of whether a parent has received income in the context of retained business income. More simply, did a parent receive income when a business the parent either controlled or was associated with retained that income rather than distribute it to the parent? We have held that when a parent can control whether or not a corporation distributes income to that parent, some or all of corporation's retained earnings can be counted in the parent's gross income. *Ochs v. Nelson*, 538 N.W.2d 527 (S.D.1995). We have also held that a director/shareholder who could not control the distribution of bank income should not have the bank's retained income included in his gross income. *Laird*, 2002 SD 99 at ¶ 25, 650 N.W.2d at 301. In each case, whether or not a parent was held to have received retained corporate income depended on the extent to which the parent could control the distribution of that income.[11] If a parent can control whether business income is retained by the business or distributed to the parent, the requirement that the parent receive the income is satisfied for purposes of SDCL 25–7–6.3. If the provisions of SDCL 25–7–6.6 are then met, some or all of that retained business income may be considered in calculating the parent's gross income.

[¶ 22.] The matter before us does concern retained corporate income. It appears undisputed that, as a minority shareholder, Bart could not control whether corporate income was distributed to him. Thus, under our holdings in *Ochs* and *Laird*, the retained corporate income should not have been included in calculating Bart's gross income. The only basis

**11.** Both the referee's recommendation and the circuit court's decision in this case were specifically premised upon this Court's decision in *Watson–Wojewski, supra.* In that case, we considered whether income in a partnership capital account and retained partnership income should be included in a parent's gross income for child support purposes. We remanded for further findings as to whether the parent had control over distributions from the partnership capital account. As to the retained partnership income, even though the parent could not control its distribution to the partners, we affirmed the circuit court's inclusion of the income in the parent's gross income on the basis that it was reported on the parent's federal income tax return. Thus, *Watson–Wojewski* required that income listed on a party's tax return be considered income for child support purposes even if the income was not actually received and even if the "recipient" had no control over the decision to receive it. We now conclude that *Watson–Wojewski* wrongly decided this issue. Therefore, we decline to be bound by *Watson–Wojewski* to the extent that it is read to automatically include in a parent's gross income all business income reported on a parent's federal tax return whether the parent received the income or not. Obviously, neither the referee nor the circuit court had the benefit of this decision in making their respective determinations in this case.

for including the corporate income in Bart's gross income for child support purposes was the fact that the corporate income was reported on Bart's federal income tax return.

[¶ 23.] We conclude that, even though the corporate income was reported on Bart's tax return, Bart did not "receive" that income as required by SDCL 25–7–6.3. It was not part of his means. He could not use this income to support either himself or his children. What Bart received from the corporation was not income, it was merely an obligation to pay taxes on the corporation's retained income. Bart faced the worst of all possibilities with respect to the calculation of child support: retained corporate income he could not spend combined with a distributed federal income tax liability he was obligated to pay.

[¶ 24.] We conclude that the pass-through corporate income from a subchapter S corporation included on Bart's federal income tax return should not have been included in calculating his gross income for child support purposes when he did not actually receive the corporate income and had no control over its distribution.

## ISSUE TWO

[¶ 25.] **Should money a parent receives from a corporation to meet the parent's tax liability on pass-through income from the corporation be included in calculating the parent's gross income for child support purposes?**

[¶ 26.] We conclude that it should be included. It is undisputed that Bart received a distribution of money from the corporation to meet his federal tax liability on the corporate income reported on his income tax return. It is clear Bart received the money whether it was paid directly to him or applied to his tax obligation. The amount of the tax distribution was part of the net profits or gains from a business, in this case Sioux Falls Towers. The tax distribution constitutes income to Bart and should be included in calculating Bart's gross income for child support purposes. On remand, however, the circuit court should decide whether the tax distribution would be an allowable deduction under SDCL 25–7–6.7 or would provide the basis for a deviation under SDCL 25–7–6.10.

[¶ 27.] Finally, given our decision as to issues one and two, we do not need to consider issue three. Because the parents' combined monthly income should fall within the child support guidelines found at SDCL 25–7–6.2, it appears no extrapolation will be necessary on remand.

[¶ 28.] The decision of the circuit court is reversed. The matter is remanded to set Bart's child support in an amount consistent with this opinion. Jill's motion for appellate attorneys fees is denied. Considering the relevant factors under *Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981), especially Jill's inability to pay and the disparity in incomes, we also deny Bart's motion for appellate attorney's fees.

[¶ 29.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and ZINTER, Justices, concur.

[¶ 30.] LOVRIEN, Circuit Judge, for MEIERHENRY, Justice, disqualified.