2003 SD 137

**Daniel J. CHRISTENSEN, Plaintiff and Appellant,**

v.

**Deanna L. CHRISTENSEN, Defendant and Appellee.**

**No. 22763.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Nov. 25, 2003.

Douglas R. Kettering, Yankton, Attorney for plaintiff and appellant.

Michael D. Stevens of Blackburn & Stevens Yankton, Attorney for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Deanna Christensen moved to compel her ex-husband, Daniel Christensen, to pay delinquent child support. After trial, judgment was entered in favor of Deanna for the amount required by a prior court order although Deanna had requested a modification for a lesser amount. Daniel appeals, arguing that the trial court erred in failing to retroactively reduce arrearages to the modified amount requested by Deanna. He also argues that some of the support payments were forgiven by a private agreement between the parties. We affirm the trial court's award for the full amount of the prior court order for those arrearages accruing prior to Deanna's motion for modification (September

2000 through October 2001). We reverse the trial court's award for the full amount of the prior court order for those arrearages accruing after Deanna's motion (November 2001 through October 2002). We remand for entry of the modified amount requested in Deanna's motion, and we remand for the re-calculation of pre-judgment interest.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Daniel and Deanna Christensen were divorced in December 1997. Pursuant to the divorce decree, Daniel and Deanna were granted joint legal custody of their two sons. Deanna was granted physical custody, subject to visitation by Daniel. The visitation included two months of extended summer visitation each June and July.

[¶ 3.] During his two months of extended summer visitation, Daniel's court-ordered child support obligation was reduced in half. For the rest of the year, Daniel was ordered to pay $722.64 per month if he provided health insurance for the boys, and $798.04 if he did not. Daniel was also ordered to pay alimony in the amount of $250.00 per month for five years.

[¶ 4.] Soon after the divorce, Deanna moved to Rapid City with the boys. After living in Rapid City for almost two years, she and Daniel started talking about reconciliation. Deanna asked Daniel to move to Rapid City, but Daniel declined. Instead, Deanna agreed to move back to Yankton. Deanna quit her job in Rapid City in August 2000, but could not move until October when her lease expired.

[¶ 5.] Although Deanna agreed to move, both parties wanted to avoid a situation where the boys would start school in Rapid City and then have to move to Yankton after the school year began.

$ 649.00 July: $250.00 Alimony + $399.00 (1/2 child support)

Therefore, Deanna and Daniel decided that the boys should stay with Daniel after his extended summer visitation and start school in Yankton that fall. Consequently, in addition to his summer visitation in June and July, the boys lived with Daniel during August and September of 2000. During that time, Deanna lived in Rapid City and drove to Yankton every weekend to see the boys. When Deanna's lease ended in October, she moved to Yankton and rented her own apartment. After the move, Deanna and Daniel shared physical custody equally, each exercising alternating weeks of custody.

[¶ 6.] In a further attempt at reconciliation, they also entered into a loose, informal "agreement" regarding child support. Deanna testified that in October 2000, the month she moved back to Yankton, she:

[T]old [Daniel] to hold off for now [on making child support payments] because we were trying to reconcile. I thought, my belief was we were going to be together as a family so just to hold off for now. But I had asked for the alimony to continue.

As a result, Daniel stopped making his child support payments. However, Daniel also stopped paying alimony and his share of the children's health insurance.

[¶ 7.] Consequently, Deanna's attorney sent Daniel a letter on December 22, 2000. The letter requested Daniel to become current on his alimony, child support and health insurance obligations. However, with respect to child support, the letter indicated that "Deanna is willing to *forgo* child support for the months of September, October, November, and December [2000] even though she does not have to *since there is no Order stopping these payments*." (Emphasis added.) The letter summarized the following delinquent payments requested for calendar year 2000:

| | | |
|---|---|---|
| $ 649.00 | Aug: | $250.00 Alimony + $399.00 (1/2 child support) [1] |
| $ 330.00 | Sept: | $250.00 Alimony + $ 80.00 Insurance |
| $ 330.00 | Oct: | $250.00 Alimony + $ 80.00 Insurance |
| $ 330.00 | Nov: | $250.00 Alimony + $ 80.00 Insurance |
| $ 330.00 | Dec: | $250.00 Alimony + $ 80.00 Insurance |

$2,618.00

Daniel paid Deanna the $2,618.00 in response to the letter. He also assumed that he was no longer responsible for the child support that had accrued in September, October, November, and December 2000.

[¶ 8.] In a continuing attempt to reconcile, Daniel and Deanna went to marriage counseling and church for a brief period. However, by April 2001, Deanna determined that she and Daniel would not be able to reconcile. She felt that reconciliation was no longer a priority of Daniel's, and that he had drifted back into behaviors that had caused the parties to divorce.

[¶ 9.] Daniel also failed to pay child support in 2001. Consequently, on October 18, 2001, Deanna filed a motion and notice of hearing on a number of child custody and child support matters, including requests: (1) that she and Daniel share physical custody of the boys; (2) that the court grant her a judgment against Daniel for $5,568.03 in child support arrearages for October 2000 through and including October 2001 ($428.31 [2] × 13 months); (3) that future child support be modified to $428.31 per month; and (4) that Daniel pay his 71% of the children's health insurance.

[¶ 10.] For reasons not reflected in the record, Deanna's motions were not heard until October 10, 2002.[3] After the October 2002 trial, Daniel was ordered to pay: (1) $3,192.16 in delinquent child support for the months of September, October, November, and December of 2000 ($798.04 × 4 months = $3,192.16); (2) $9,576.48 in delinquent child support for the year 2001 ($798.04 × 12 months = $9,576.48); and, (3) $7,980.40 in delinquent child support for the months of January through October, 2002 ($798.04 × 10 months = $7,980.40). The court also found that Deanna was entitled to pre-judgment and post-judgment interest, plus attorney fees, tax and costs.

[¶ 11.] Daniel appeals, and we review the following issues:

I. **Whether the trial court erred in awarding Deanna $3,192.16 in child support for the months of September, October, November, and December 2000, the months she allegedly forgave Daniel's obligation.**

II. **Whether the trial court erred in awarding Deanna delinquent child support in the full amount of the prior court order for the year 2001, and for the months of January through October 2002, even though Deanna had filed a**

1. The parties have not indicated why Deanna only requested "1/2 child support" for the month of August. However, this payment was not under review by the trial court, so we also decline to review it.

2. In her affidavit supporting her motion, Deanna explained why she only sought $428.31 per month, instead of the court-ordered amount of $722.64 with insurance and $798.04 without insurance. That explanation is discussed at ¶ 21, *infra*.

3. The record reflects that the October 30, 2001 scheduled hearing was continued four times. With one exception, the record does not reflect the reasons for these delays.

motion for modification requesting a lesser amount.

III. Whether the trial court erred in awarding Deanna prejudgment interest.

IV. Whether Deanna is entitled to attorney fees on appeal.

## STANDARD OF REVIEW

[¶ 12.] The interpretation and application of our child support statutes are questions of law. *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992). "Questions of law are reviewed de novo." *Roberts v. Roberts,* 2003 SD 75, ¶ 8, 666 N.W.2d 477, 480 (citing *Hendricksen v. Harris,* 1999 SD 130, ¶ 7, 600 N.W.2d 180, 181). Daniel's arguments that waiver and equitable estoppel preclude the court's award present a mixed question of law and fact. "Mixed questions of law and fact that require the reviewing court to apply a legal standard are reviewable de novo." *Bennett v. Peterson,* 2003 SD 16, ¶ 13, 657 N.W.2d 698, 701 (citing *Phipps Brothers, Inc. v. Nelson's Oil & Gas, Inc.,* 508 N.W.2d 885, 888 (S.D.1993); *Crouse v. Crouse,* 1996 SD 95, ¶ 6, 552 N.W.2d 413, 415).

## ANALYSIS AND DECISION

**I. Whether the trial court erred in awarding Deanna $3,192.16 in child support for the months of September, October, November, and December 2000, the months she allegedly forgave Daniel's obligation.**

[¶ 13.] Daniel points out that on December 22, 2000, Deanna sent the letter offering to "forgo" child support payments for these months if Daniel would pay her $2,618.00. That figure appears to have represented Daniel's past-due alimony, insurance obligation, summer reduced child support, and one month of child support after the boys began living with Daniel. Daniel argues that the letter led him to believe that if he paid the $2,618.00, Deanna would forgive his remaining 2000 child support arrearages.

[¶ 14.] However, Deanna did not agree to "forgive" her right to the child support arrearages. Deanna first told Daniel that he could "hold off for now" because she believed that they were going to be a family again. She later indicated in the letter that there was no court order upon which an elimination could be based, *see supra* ¶ 7, so she offered to "forgo" the arrearages. Furthermore, this "agreement" to "forgo" was based upon the expected reconciliation of the parties and Daniel making his other payments. Therefore, as fairly read, the "agreement" was only an offer to *forgo* arrearages, and that offer was premised both on Daniel's payments and upon reconciliation. However, neither premise occurred: Daniel did not stay current on his payments, and the parties did not reconcile.

[¶ 15.] More importantly, Daniel's reliance on this type of agreement is misplaced as a matter of law. "Parents are obligated to provide support for their children. This obligation is not only a matter of public policy, but is also statutory." *Vander Woude v. Vander Woude,* 501 N.W.2d 361, 363 (S.D.1993) (citing SDCL 25–5–18.1; SDCL 25–7–6.1).[4] One of the

---

4. SDCL 25–5–18.1 provides in relevant part: "The parents of any child are under a legal duty to support their child in accordance with the provisions of § 25–7–6.1...." SDCL 25–7–6.1 provides:

The parents of a child are jointly and severally obligated for the necessary maintenance, education and support of the child in accordance with their respective means. Until established by a court order, the minimum child support obligation of a parent

statutory obligations "requires that any agreement relieving a party of its support obligations *be in writing and have the approval of the court.*" *Id.* (emphasis added).

> *An agreement between parents* or other responsible persons relieving a party of any duty of support or responsibility or purporting to settle past, present or future support obligations as settlement or prepayment may not act to reduce or terminate any rights of the department of social services or any support obligee to recover from parents or other responsible persons for support provided, *unless the* department or any *support obligee has consented to the agreement in writing and the agreement has been approved by a court of competent jurisdiction.*

SDCL 25–7A–17 (emphasis added). These requirements are intended to inhibit a person's "ability to contract away a duty of support." *Vander Woude*, 501 N.W.2d at 364 (quoting *Sharp v. Sharp*, 422 N.W.2d 443, 447 (S.D.1988)). Accordingly, "this court does not look favorably upon agreements to modify child support that have not received the court's approval." *Id.* In fact, such agreements are generally prohibited because they are against public policy.

> The parents cannot make a valid irrevocable contract which will relieve them of the duty to support and educate their minor children; the rights of children to support and maintenance cannot be bargained away. Accordingly, parental

agreements which have the effect of making a child a public charge cannot be countenanced, and a support agreement which is injurious to the best interest of a child is invalid for any purpose. In particular, the father may not by contract avoid his duty to support and educate his minor children, and a wife cannot contract away the right of children to be supported by their father. An agreement between the father and mother which attempts to relieve the father of his obligation is, as between the father and children, ineffective as a violation of public policy; and where the father and mother are equally and jointly charged by statute for the maintenance of their children, an agreement by the mother to perform her statutory duty does not discharge the father's statutory obligation.

*Thomas v. Hauge*, 2002 SD 12, ¶ 8, 639 N.W.2d 520, 521–22 (citation omitted).

[¶ 16.] In this case, the December 2000 "agreement" was not reduced to writing or approved by a court. The trial court relied on these omissions specifically finding that "[t]he parties' [sic] never entered into a written agreement or stipulation that [Deanna] would forgive or eliminate child support. Further, no agreement was submitted and approved by the court that forgave or eliminated [Daniel's] child support obligation to [the children]."

[¶ 17.] Therefore, Daniel may not rely on the December 2000 "agreement" to eliminate any of his child support obli-

---

who fails to furnish maintenance, education and support for his child, following a continued absence from the home, is the obligor's share of the amount shown in the support guidelines, commencing on the first day of the absence. For the purposes of this section, "continued absence from the home," means that the parent or child is physically absent from the home for a period of at least thirty consecutive days, and that the nature of the absence constitutes family dissociation because of a substantial severance of marital and family ties and responsibilities, resulting in the child losing or having a substantial reduction of physical care, communication, guidance and support from the parent.

gations. That conclusion is especially appropriate in cases like this where the "agreement" is nebulous and susceptible of different interpretations. The trial court recognized the problems caused by such informal arrangements and admonished the parties:

> [W]hen you reach separate agreements about what you were going to do and where the kids are going to live, you're free to reach an agreement, you are free to reduce it to writing so that there's no question. But you chose not to do that. You chose to engage in some kind of a vague agreement that now we're in Court and you're fighting with each other about because you didn't have a clear understanding. That you didn't get any Court approval and you didn't get it reduced down to any written agreement where there's a firm and clear understanding.... And in the future if the parties want to reach an agreement that's different than the Court's Order then you better get the Court's order of approval.

We agree.

▰▰▰ [¶ 18.] Daniel, however, also argues that the affirmative defenses of equitable estoppel and waiver bar recovery of this child support. In support of this argument, Daniel relies on *Bennett*, 2003 SD 16, 657 N.W.2d 698. However, in *Bennett* the obligor's equitable estoppel and waiver arguments were "unpersuasive" and "not a viable defense." *Id.* ¶ 20 & n.3. *Bennett* stated that "[w]e will not allow such a carefully crafted policy [involving limitations on reducing child support arrearages] to be defeated by the invocation of equitable defenses in circumstances where [the obligee] has not affirmatively misled the [obligor] to believe [the obligor] would bear no responsibility." *Id.* ¶ 21 (quoting *Department of Human Servs. v. Bell*, 711 A.2d 1292, 1295–96 (Me.1998)) (further citations omitted). We see no affirmative *misleading* by Deanna here.

▰▰▰ [¶ 19.] Daniel's estoppel and waiver arguments also fail because estoppel and waiver are affirmative defenses, which Daniel failed to plead or argue to the trial court. A defendant is required to plead affirmative defenses. *Jurgensen v. Smith*, 2000 SD 73, ¶ 21, 611 N.W.2d 439, 442 (citing SDCL 15–6–8(c)). *See also High Plains Genetics Research, Inc. v. J K Mill–Iron Ranch*, 535 N.W.2d 839, 845 (S.D.1995) (stating that "[a] party has 'a duty to plead' affirmative defenses; failure to do so results in a bar to the defense"). Here, Daniel failed to plead or argue these affirmative defenses, and as a result, they were waived.[5] "We will ordinarily decline to review issues not properly presented to the trial court." *Estate of Gaspar v. Vogt, Brown & Merry*, 2003 SD 126, ¶ 15, 670 N.W.2d 918 (citing *Knudson v. Hess*, 1996 SD 137, ¶ 8, 556 N.W.2d 73, 75).

[¶ 20.] We conclude that the trial court did not err in awarding Deanna $3,192.16 in delinquent child support for the months of September, October, November, and December of 2000.

**II.  Whether the trial court erred in awarding Deanna delinquent child support in the full amount of the prior court order for the year 2001, and**

---

5. On appeal, Daniel also seeks a deviation in his child support obligation pursuant to SDCL 25–7–6.10(6), which states:

    Deviation from the schedule in § 25–7–6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:  ... (6) The effect of agreements between the parents regarding extra forms of support for the direct benefit of the child....

    Daniel also failed to plead or argue this to the trial court. Therefore, we decline to consider it on appeal.

for the months of January through October, 2002, even though Deanna had filed a motion for modification requesting a lesser amount.

■■■■ [¶ 21.] In Deanna's October 2001 motion, she sought a judgment against Daniel for $5,568.03 in child support arrearages. That amount was not, however, based upon the prior court ordered obligation of $798.04/$722.64 per month: she only requested $428.31 per month. Deanna's $428.31 request was based upon her motion for a modification. Deanna's request was calculated by offsetting each party's obligations because they were equally sharing physical custody.[6] Deanna stated:

> Even though [Daniel] and I have been sharing custody equally, I believe that I am entitled to child support inasmuch as his salary exceeds mine. I believe that [Daniel] should have paid me child support in the sum of $428.31 which is the difference between what he was to pay ($722.64) when I had full custody and my financial obligation [294.33, her 29% share of the joint obligation] as the custodial parent; i.e. $722.64–$294.33 = $428.31.

[¶ 22.] Deanna's request for a modification before her October 2001 motion would

6. Ordinarily, the appropriate method to calculate an adjustment for extended visitation arrangements is through an abatement or cross credit, rather than Deanna's method of off-set. Pursuant to SDCL 25–7–6.14:

> [U]nless the parties otherwise agree and the agreement is approved by the court, the court may, if deemed appropriate under the circumstances, order an abatement of not less than thirty-eight percent nor more than sixty-six percent of the child support if: (1) A child spends ten or more days in a month with the obligor; and (2) The days of visitation and the abatement amount are specified in the court order;
>
> The court shall allow the abatement to the obligor in the month in which the visitation is exercised, unless otherwise ordered. The abatement shall be pro-rated to the days of visitation. It shall be presumed that the visitation is exercised. If the visitation exercised substantially deviates from the visitation ordered, either party may file a petition for modification without showing any other change in circumstances.
>
> As used in this section, shared responsibility means a parenting plan whereby each parent provides a suitable home for the child of the parties, the court order allows the child to spend at least one hundred twenty days in a calendar year in each home, and the parents share the duties, responsibilities, and expenses of parenting. In a shared responsibility situation, unless the parties otherwise agree and the agreement is approved by the court, the court may, if deemed appropriate under the circumstances, order a shared responsibility cross credit. The cross credit shall be calculated by multiplying the combined child support obligation using both parents' monthly net incomes by 1.5 to arrive at a shared custody child support obligation. The shared custody child support obligation shall be apportioned to each parent according to his or her net income. A child support obligation is computed for each parent by multiplying that parent's portion of the shared custody child support obligation by the percentage of time the child spends with the other parent. The respective child support obligations are offset, with the parent owing more child support paying the difference between the two amounts. It shall be presumed that the shared responsibility parenting plan is exercised. If the parenting plan exercised substantially deviates from the parenting plan ordered, either party may file a petition for modification without showing any other change in circumstances.
>
> The court shall consider each case individually before granting either the basic visitation or shared responsibility adjustment to insure that the adjustment does not place an undue hardship on the custodial parent or have a substantial negative effect on the child's standard of living.

Although Deanna and Daniel did not follow this statute, there was no objection to Deanna's method of modification for the shared visitation and custody arrangement.

have required the trial court to retroactively modify the child support that Daniel was ordered to pay under the prior court order. However, as the trial court recognized, "[i]t is well established that: '[a]ny unpaid support bec[omes] an unpaid judgment against [the payor spouse] as a matter of law, not subject to retroactive modification.'" *Faulk v. Faulk*, 2002 SD 51, ¶ 12, 644 N.W.2d 632, 634 (further citations omitted). Moreover, "[s]tatutorily, courts and administrative entities may not retroactively modify past due child support obligations except for the period in which there is a pending petition for modification." *Vander Woude*, 501 N.W.2d at 363 (citing SDCL 25–7–7.3). Even then, a court may modify only "from the date that notice of hearing of the petition has been given...." SDCL 25–7–7.3. Thus, we must separately analyze the arrearages accruing before Deanna's motion for modification and notice of hearing and those accruing thereafter.

### Arrearages Accruing Before the October 2001 Modification Motion

(September 2000 through October 2001)

[¶ 23.] In determining that Daniel owed the full court ordered obligation of $798.04 per month for the pre-motion arrearages, the trial court correctly relied upon the fact that there had been no motion filed to modify the court-ordered amount, and there was no written agreement approved by the court. *See* SDCL 25–7–7.3. Therefore, that part of the trial court's decision awarding Deanna the full court-ordered amount of $798.04 per month for September 2000 through the time of the October 2001 modification motion is affirmed.[7] *See Vander Woude*, 501

N.W.2d 361; *Thomas*, 2002 SD 12, 639 N.W.2d 520.

### Arrearages Accruing After the October 2001 Modification Motion

(November 2001 through October 2002)

[¶ 24.] On October 18, 2001, Deanna filed the motion that requested a modification of child support. On October 18, 2001, she also gave notice of a scheduled hearing on that motion. Therefore, pursuant to SDCL 25–7–7.3, the monthly support obligation accruing thereafter was subject to modification.

> Any past due support payments are not subject to modification by a court or administrative entity of this state, *except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given* to the obligee, the obligor, and any other parties having an interest in such matter.

(Emphasis added.)

[¶ 25.] Deanna's motion and notice of hearing satisfied these modification requirements. Moreover, Deanna only sought the modified amount of $428.31 per month. Therefore, the trial court erred in continuing to enforce the prior monthly order of $798.04 after the October 18, 2001 motion and notice of hearing. We reverse that part of the judgment and remand for entry of judgment for $5,139.72: the requested amount of $428.31 for the 12 months from November, 2001 through October, 2002.

### III. Whether the trial court erred in awarding Deanna prejudgment interest.

---

7. $3,192.16 for the months of September, October, November, and December 2000 ($798.04 × 4 months = $3,192.16); and

$7,980.40 for the months of January through October 2001 ($798.04 × 10 months = $7,980.40).

[¶ 26.] Daniel only raised this issue in the event the principal amount of the award was adjusted in this appeal. Because we have adjusted the amount of child support arrearages accruing after the motion for modification, we must also remand this issue for the re-calculation of interest.

## IV. Whether Deanna is entitled to attorney fees on appeal.

[¶ 27.] Deanna filed a motion with this Court for $1,399.20 in attorney fees on appeal. The motion was supported by an affidavit and an itemized statement of legal services provided. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). "SDCL 15–17–38 provides that attorney fees may be granted in cases of domestic relations and support." *Jacobson v. Jacobson*, 2000 SD 60, ¶ 30, 611 N.W.2d 210, 217. "In determining if a party is entitled to attorney fees, we consider 'property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case.'" *Pesicka v. Pesicka*, 2000 SD 137, ¶ 20, 618 N.W.2d 725, 728 (quoting *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994)). We also consider the reasonableness of the fee request. Considering the fact that Daniel earns nearly three times the amount that Deanna earns, and that Daniel's refusal to pay child support necessitated Deanna's litigation of this matter, we grant Deanna's motion in the amount of $1,399.20.

[¶ 28.] Affirmed in part, reversed in part, and remanded.

[¶ 29.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.