#24618-rev & rem-JKM

**2008 SD 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

APRIL K. NACE,                                   Plaintiff and Appellee,

    v.

DANIEL A. NACE,                                   Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STUART L. TIEDE
Judge

\* \* \* \*

MARCENE J. SMITH of
Wilkinson & Wilkinson                             Attorneys for plaintiff
DeSmet, South Dakota                              and appellee.

MICHAEL M. BILLION
AARON J. EMERSON of
Myers & Billion, LLP                              Attorneys for defendant
Sioux Falls, South Dakota                         and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 19, 2008

OPINION FILED **07/30/08**

#24618

MEIERHENRY, Justice

[¶1.]        Daniel Nace appeals a circuit court's acceptance of a referee's child support recommendation.

**FACTS**

[¶2.]        April and Daniel Nace divorced in January 2006.  Daniel, the noncustodial parent of the parties' two minor children, was ordered to pay April $574 per month in child support.  April later petitioned to modify child support alleging a change in her employment and an increase in daycare costs.  April also requested deviations, pursuant to SDCL 25-7-10(2) and (6), for the "financial condition of either party" and the "voluntary act reducing either parent's income."

[¶3.]        Daniel and four other family members own Murray Construction, LLC (the company).  Daniel personally owns 18.16 percent of the company.  The managing members of the company are Daniel's mother, Teresa Nace, and his aunt, Bonnie Murray.  Initially, 11 percent of the company was gifted to Daniel.  In 2006, Daniel purchased approximately 7 percent more of the company from his uncle for $432,700.  The company loaned him the funds for the purchase and added the same amount to an account receivable in his name.  Daniel provided no out-of-pocket money for the purchase.  The account receivable also contained other loans for Daniel's personal expenses and for his federal tax liability that had been paid by the company on his behalf.  The loans were interest free with no promissory notes or payment schedules.  All other members of the company, even the managing members, had similar debt to the company for hundreds of thousands of dollars.  At the time of the petition, Daniel's account receivable totaled $567,549.13.  Daniel had

-1-

personally made no payments on the account receivable debt in all of his years as a member. The only reduction of Daniel's account receivable was an offset of his share of the company's 2006 bonus against the account balance. Daniel's net share of the company was valued at $742,296.23.

[¶4.] Although a substantial portion of the company's income was retained, the company paid Daniel $23,400 in compensation plus a bonus of $25,000 and paid his federal income taxes of $18,521. The referee recognized that the bonus was not directly paid to Daniel but concluded that Daniel "received" the payment because it reduced his debt to the company. The referee made the determination without a finding that Daniel had control over the distribution of the bonus. Relying on *Roberts v. Roberts,* the referee also concluded that Daniel's federal income tax liability paid by the company was part of Daniel's "gross income because the amount of the tax will eventually be deducted from [Daniel's] capital account as a distribution and applied to the balance due on his loan." Citing, 2003 SD 75, ¶26, 666 NW2d 477, 484. Ultimately, the referee recommended an increase in Daniel's child support obligation to $1,194 per month.

[¶5.] Daniel objected to several of the referee's findings. The circuit court accepted the referee's findings, conclusions and recommendation. Daniel now appeals from the circuit court's order. He contends that the referee erroneously included in his gross income, his bonus and his company-paid federal taxes. He claims that he did not receive the money, therefore the amounts should not have been included in his gross income.

## ISSUES

1. **Whether Daniel's bonus income was properly included in his gross income for child support purposes.**
2. **Whether money paid on Daniel's behalf for tax liability should be used to calculate his gross income for child support purposes.**

## STANDARD OF REVIEW

[¶6.]       We review findings of fact under the clearly erroneous standard. *Roberts*, 2003 SD 75, ¶8, 666 NW2d at 480 (citation omitted). We review questions of law de novo. *Id.* "An award of child support will not be disturbed unless the trial court clearly abused its discretion." *Id.* (citation omitted).

### 1.       Whether Daniel's bonus income was properly included in his gross income for child support purposes.

[¶7.]       Child support obligations are based on the parents' "means" or ability to pay. *Id.* ¶11, 666 NW2d at 480 (citing SDCL 25-7-6.1). In order for Daniel's "bonus" and the amount paid in taxes on his behalf to be considered gross income for child support purposes, the amounts must first be received by Daniel and then fit within a category listed under SDCL 25-7-6.3.[1] *Roberts,* 2003 SD 75, ¶19, 666

---

1.       SDCL 25-7-6.3 provides as follows:
> The monthly net income of each parent shall be determined by the parent's gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:
> (1) Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus, or otherwise designated;
> (2) Self-employment income including gain, profit, or loss from a business, farm, or profession;
> (3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments, or insurance contracts;

(continued . . .)

NW2d at 481-82.  A parent "receives" income when the allotted amount could be used by the parent to "support himself/herself and, thus, his child." *Id.* ¶¶14-15, 666 NW2d at 482.  If the income derives "from a business, profession or farming or from rentals, royalties, estates, trusts or other sources, then it must be treated as provided by SDCL 25-7-6.6." *Id.* ¶19, 666 NW2d at 482.

[¶8.]    Daniel presented evidence that he did not have access to the bonus to support himself because it was applied directly to offset his loan from the company. Normally, before including such a bonus as income, the referee/court would need to determine if the shareholder had the ability to control its distribution.  *See id.* ¶21, 666 NW2d at 483 (holding that if a shareholder has the ability to control a distribution we deem it constructively received for child support purposes).  A shareholder may be considered to have control over and to have received retained company income if the shareholder has the ability to direct distributions.  *Id.* Whether a person can control distributions is a fact specific inquiry.  *See id.*

_____

(. . . continued)

      (4) Interest, dividends, rentals, royalties, or other gain derived from investment of capital assets;
      (5) Gain or loss from the sale, trade, or conversion of capital assets;
      (6) Unemployment insurance benefits;
      (7) Worker's compensation benefits; and
      (8) Benefits in lieu of compensation including military pay allowances.
      If the income of the parents is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

[¶9.]    In determining whether a parent/obligor has control over a company's distributions, other courts have considered a variety of factors. The factors include the following: 1) comparison of the amount of retained income versus the parent/obligor's gross income and percent of ownership; 2) a history or pattern of past retained income; 3) the company's need to retain income to "maintain or increase past or current levels of income production as opposed to unnecessary, premature, unrelated or overly aggressive expansion of business," *Reed v. Reed*, 1997 WL 34960, at *2 (OhioCtApp 1997); 4) whether the retained income is acquired from the current year's profits or out of past year(s)' savings; 5) comparison of the ordinary rate of return for a similar investment, *Clark v. Clark*, 779 A2d 42, 53-54 (Vt 2001); 6) the ability to receive favorable or fictitious loans (constructive distributions) from the company, *see West v. West*, 891 So2d 203, 217-18 (Miss 2004); and 7) "any other factor that bears on the issue of whether the obligor is manipulating his or her income in an effort to avoid the proper payment of child support." Taylor v. Fezell, 158 SW3d 352, 359 (Tenn 2005); *see also* Walker v. Grow, 907 A2d 255, 270-71 (MdCtSpecApp 2006) (noting that minority status is not dispositive on control issues stating "nature of the business, the governing documents, and the business and non-business relationship among the shareholders would also have to be considered"). Furthermore, whenever company income is imputed to a parent the circuit court or referee "should consider the totality of the circumstances." *See* Kestner v. Clark, 182 P3d 1117, 1122 (Alaska 2008); *see also Reed*, 1997 WL 34960, at *2 (noting that a court must analyze the "totality of the financial circumstances" in each case). Although these factors are neither

mandatory nor exhaustive, they provide guidance in analyzing whether income retained by a company should be considered when calculating gross income for child support purposes.

[¶10.]     If the parent is avoiding obligations by cloaking a distribution in debtor/creditor language, the referee may consider it as a distribution of income notwithstanding the language of SDCL 25-7-6.5, which requires a finding of insufficient support before considering a parent's ability to borrow. *See* Ochs v. Nelson, 538 NW2d 527, 529 (SD 1995) (noting that although the testimony stated the company must retain its income, the evidence of a shareholder borrowing money without making any repayment on the loan for three years conflicted with this testimony); *see also West*, 891 So2d at 217-18 (listing factors to consider). A "loan" may increase a parent's paper debt; however, if the loan proves to be fictitious the money should be considered a distribution. *See Ochs*, 538 NW2d at 529.

[¶11.]     In this case, the referee failed to make any specific finding regarding Daniel's control over the bonus' distribution. Thus, we remand to the circuit court for the determination of whether Daniel had control over the distribution of the $25,000 bonus amount.

> **2.     Whether money paid on Daniel's behalf for tax liability should be used to calculate his gross income for child support purposes.**

[¶12.]     Daniel next claims that his tax liability paid by the company should not have been considered in calculating his child support obligation. He contends that he never received this money because the company added the amount of tax liability paid on his behalf to his account receivable total. He also argues that if it

is included in his gross income, the referee must consider possible deductions or deviations available under SDCL 25-7-6.7 and SDCL 25-7-6.10. Based on our holding in *Roberts,* the referee and circuit court did not err by including the tax amount in Daniel's gross income. Nevertheless, as in *Roberts,* on remand the referee should consider whether the gross income may be reduced by a deduction under SDCL 25-7-6.7 or whether the set schedule amount may be deviated from under SDCL 25-7-6.10.[2] *See Roberts,* 2003 SD 75, ¶26, 666 NW2d at 484.

[¶13.]	We reverse and remand.

[¶14.]	GILBERTSON, Chief Justice and KONENKAMP, and ZINTER, Justices, concur.

[¶15.]	SABERS, Justice, concurs specially.


SABERS, Justice (concurring specially).

[¶16.]	I write specially to point out that upon proper application, the referee can consider alternatively the value of the obligor's interest in this family owned business for the purpose of support payments. *See* SDCL 25-7-6.5 (providing that "[i]f a child's needs are not being met through the income of the parents, assets shall be considered. If the parents have savings, life insurance, or other assets in

---

2.	Daniel alternatively argued that if the $25,000 bonus is included in his gross income, it should be offset by the increase in his account's receivable for the company's payment of his tax obligation. Daniel did not make this argument to the referee or circuit court, and we will not consider it on appeal. *See* SDCL 25-7A-6 (noting that the circuit court's "hearing [is] to be solely on the record established before the referee").

amounts unrelated to income, these holdings shall be considered.  The parents'

ability to borrow may be used to determine financial ability.").