#24695, #24703-a-SLZ

**2008 SD 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DENISE A. CLARK,                                     Plaintiff and Appellee,

  v.

BRIAN E. CLARK,                                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

DAVID W. SIEBRASSE of
Siebrasse Law Office                                Attorney for plaintiff
Pierre, South Dakota                                and appellee.

AL ARENDT of
Arendt Law Office                                   Attorney for defendant
Pierre, South Dakota                                and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 21, 2008

OPINION FILED **07/02/08**

ZINTER, Justice

[¶1.]        Brian E. Clark appeals the circuit court's award of permanent alimony to Denise A. Clark.  By notice of review, Denise appeals the circuit court's denial of attorney fees.  We affirm.

## I.

[¶2.]        Brian and Denise were married in 1989.  At that time, Denise was twenty-two years-old and employed at K-Mart.  Brian was twenty-six years-old and also employed at K-Mart.  The couple moved from Cheyenne, Wyoming, to Pierre, South Dakota in 1989.  They had two children:  SAC and ZAC, who were seventeen and fourteen years of age at the time of trial.

[¶3.]        In the fall of 2005, Denise, who had one year of college, quit her job at a medical clinic where she was earning an annual income of $34,000 in a secretarial position.  She took a replacement secretarial position with the local school system.  Her new monthly take-home pay was approximately $1,400 (annual gross income of $24,336).  There is no dispute that Denise took this voluntary reduction in income to spend more time with the parties' children.

[¶4.]        Brian has a bachelor's degree in business administration and twenty years experience in retail management.  In 2005 and 2006, he was working as an assistant manager at K-Mart, earning approximately $42,000 a year.  The Clarks' income totaled $69,032 in 2005.  Brian subsequently lost his job at K-Mart for "non-performance," and at the time of trial, he was earning $809 per month ($9,700 per year) as a sales representative for an insurance company.  He testified that after his

termination at K-Mart, he had submitted approximately thirty applications for employment but had no offers.

[¶5.]	In April of 2006, Denise initiated this divorce after she discovered that Brian had been having an extramarital affair. The disclosure came to light when the woman with whom he was having the affair was murdered by her husband. Shortly thereafter, the murderer accused Brian of the offense. As a result, law enforcement extensively interviewed both Brian and Denise concerning intimate details of their lives. The murder and affair also received extensive media coverage.

[¶6.]	At trial, Brian did not contest: adultery as the ground for divorce; the award of custody of the children to Denise; and a child support obligation of $604 per month. Further, the parties stipulated to the division of all assets and liabilities, except for a pickup truck.[1] This included a stipulation that Denise be awarded the marital residence, which had an appraised value of $104,562 and an outstanding mortgage. Denise also received her retirement account and two vehicles. Brian received his retirement account in the amount of $19,218, a car, a

---

1.	Prior to trial, Brian's mother died. Denise requested the court to utilize the expected value of that inheritance in making a division of the marital property. The court recognized that Brian would inherit one-third of the property, estimated at approximately $270,000. The court also recognized that although Brian could not force a division of assets held in joint tenancy with other siblings, it was likely that he would receive an additional $28,014.77. The court ruled, however, that Denise made no contribution to the acquisition of this inheritance, "and thus the same is non-marital property and will not be included . . . in the determination of the property distribution." The court only considered Brian's prospective inheritance "in determining the alimony award in light of [Denise's] demonstrated need for financial support after the divorce."

boat, other personal property, and marital debt. The property division resulted in a 61% net share to Denise, and a 39% net share to Brian.

[¶7.]     With respect to the ability to pay alimony, the circuit court found that Brian's termination from K-Mart was "due to his voluntary actions of harassing behavior and comments to subordinates." The court found that his annual rate of pay at the time of his termination was $42,000, and that since his termination from K-Mart, he earned less than minimum wage. The court noted that Brian's income for 2006, which included over three month's employment with K-Mart, was only $10,739. The court found, however, that: (1) "[t]here are numerous jobs in the Pierre/Ft. Pierre area for which [Brian] is qualified and which pay over $40,000 per year"; (2) Brian was under-employed because, according to the South Dakota Labor Market Information Center, the average salary in South Dakota for an individual with a bachelor's degree was $40,568, and for an individual with a bachelor's degree or higher and work experience it was $74,637; and (3) the unemployment rate for South Dakota in June of 2007, was three percent. Thus, the circuit court ultimately found that Brian was "malingering with regard to finding employment at a position commensurate with his education and work experience."

[¶8.]     With respect to Denise's need for alimony, the court found that Denise's take-home pay, not including child support, was approximately $1,400 per month. Her expenses and necessities were $1,237 per month. These expenses did not include the home mortgage payment of $650 and the costs related to what the

parties have described as "extracurricular" activities,[2] which Denise estimated at $762 per month. The court found that because Denise's take-home pay was only $1,400 per month excluding child support, Brian needed to provide $650 per month in spousal support to enable Denise to maintain the home and her middle-income standard of living. The court denied Denise's motion for attorney fees.

*Alimony*

[¶9.]       A circuit court's award of alimony is reviewed under the abuse of discretion standard. Dejong v. Dejong, 2003 SD 77, ¶5, 666 NW2d 464, 467. "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." Johnson v. Johnson, 2007 SD 56, ¶16, 734 NW2d 801, 806 (citations omitted).

[¶10.]      As the party requesting alimony, Denise had the burden of proving her need for support and that Brian had "sufficient means and abilities to provide for part or all of that need." *Dejong,* 2003 SD 77, ¶7, 666 NW2d at 467 (citations omitted). The following factors are also considered:

> (1) the length of the marriage; (2) the parties respective earning capacity; (3) their respective financial condition after the property division; (4) their respective age, health and physical condition; (5) their station in life or social standing; and (6) relative fault of the parties in the termination of the marriage.

Morrison v. Morrison, 323 NW2d 877, 878 (SD 1982); *Dejong, supra.*

[¶11.]      The Clarks were married for sixteen years. Brian admitted fault for the divorce. Both Denise and Brian are of equivalent age and are in good health.

---

2.      Some of these expenses related to the extracurricular school needs of the children and some appear to be ordinary household expenses.

With respect to financial condition and earning capacity, the circuit court found that Denise was earning approximately $24,000 per year. The court found that Brian was earning $42,000 at the time of his termination from K-Mart, and that since his termination his annual income was $10,739 (in 2006). However, the court also found Brian under-employed and malingering with regard to finding post-separation employment that was equivalent to his pre-termination wage. The court finally noted that Brian was about to receive a substantial inheritance. The court did not divide or consider it a marital asset, and only used it in considering Brian's financial condition after the divorce. *See supra* n1.

[¶12.] On appeal, Brian's initial brief suggested that he had living expenses of $1,200 per month, making the payment of alimony unaffordable. In his reply brief, however, Brian explicitly acknowledged that he does "not argue, or set forth a request that he not be required to pay alimony because he [is] unable to afford it." Appellant's reply brief, p1. Therefore, we assume that he had sufficient means and ability to pay the requested support.

[¶13.] With respect to Denise's need for support, she argues that without spousal support she would be unable to support herself in the middle income standard of living that she enjoyed during the sixteen-year marriage. She points out that prior to the divorce, the parties' annual income totaled approximately $69,000 and she relied upon Brian as the primary financial provider for many of the family's living expenses. After the divorce, Denise notes that she will earn only $24,000. And, without spousal support, Denise testified that she would not be able to afford the $650 mortgage and basic living obligations.

[¶14.] Brian argues that the circuit court improperly mixed the need for child support with the need for alimony. In *Schabauer v. Schabauer*, 2003 SD 146, ¶17, 673 NW2d 274, 278, this Court noted "that alimony and child support are separate concepts. Child support provides for the maintenance of the children while alimony represents a suitable allowance to a party for his/her support." Because that circuit court considered the number of children and the children's standard of living in making an award of alimony, we reversed noting, "the amount of [wife's] alimony should not have been governed by the presence of children in her household or their needs and standard of living." *Id.* ¶18. "Rather, the amount should have reflected what was required for a suitable allowance to [wife] based upon an analysis of the factors applicable to awarding alimony." *Id.* This Court instructed:

> Alimony and child support must be considered separately, and [husband's] parental responsibility to provide for the maintenance of his children on the basis of the factors applicable to setting child support should not have been interwoven with his marital obligation to provide a suitable allowance for [wife's] support.

*Id.*

[¶15.] In this case, the circuit court did not make the error that occurred in *Schabauer*. In its conclusions of law, the circuit court limited its consideration to the proper factors. The circuit court stated:

> Based upon the length of the marriage, [Brian's] fault in the breakdown of the marriage, [Denise's] previous dependence on [Brian] to maintain her middle class standard of living and social station in life, the higher earning capacity of [Brian], the value of the inheritance [Brian] will receive,[3] the limited

---

3.  Although the circuit court considered the prospective inheritance under the financial condition standard, we see nothing improper about that

(continued . . .)

> earning potential of [Denise], and the need for [Denise] to receive financial assistance to maintain her in the home and present standard of living, [Brian] shall pay to [Denise] permanent alimony of $650[.]"

This reasoning reflects that the court did not interweave alimony and child support.

[¶16.]    Brian, however, argues that in addition to Denise's monthly living expenses of $1,237, she improperly included $572 in extracurricular expenses that were not recurring. Brian argues that of these expenses, only $200 are monthly recurring expenses, and the remaining expenses represent one-time expenditures that should not be considered in the need for alimony. Brian also argues that Denise's child support should be considered as income in determining Denise's need for alimony.

[¶17.]    Brian's arguments, however, fail to acknowledge that under *Schabauer,* neither the children's needs nor their child support should be considered in determining Denise's need for spousal support. Spousal support should reflect the amount required for a suitable allowance based upon an analysis of the factors applicable to alimony. *Schabauer*, 2003 SD 146, ¶18, 673 NW2d at 278. This record of the appropriate factors reflects that with $1,237 in ongoing expenses, $200 in non-objected to extracurricular expenses, and a $650 mortgage payment, Denise has $2,087 in monthly expenses with only $1,400 in monthly income to pay those

---

(. . . continued)

> consideration. Indeed, the parties' respective financial condition after the property division is a proper consideration in determining spousal support. *Morrison*, 323 NW2d at 878.

expenses.[4]  Thus, the $650 spousal support was necessary to pay the mortgage, maintain the marital home, and maintain Denise's standard of living.  Considering Denise's financial situation together with Brian's fault and conceded ability to pay, the circuit court did not abuse its discretion in ensuring that Denise would enjoy the same standard of living that she enjoyed prior to the divorce.  Billion v. Billion, 1996 SD 101, ¶41, 553 NW2d 226, 235 (providing, "[s]tandard of living remains an important factor after a divorce.") (citing Ochs v. Nelson, 538 NW2d 527, 531 (SD 1995)).

### *Attorney Fees*

[¶18.]        By notice of review, Denise argues that the circuit court erred in denying her request for attorney's fees.  For this Court to overturn the circuit court's determination, "the record must show an 'abuse' of discretion, not merely one which might have been made differently if done so as the initial fact finder." Iversen v. Wall Bd. of Educ., 522 NW2d 188, 193 (SD 1994).  When determining an award of attorney fees, the circuit court considers:  "(1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required."  Ryken v. Ryken,

---

4.    Brian does not contend that the court's finding regarding Denise's take-home pay of $1,400 was clearly erroneous.  Although Brian does suggest that Denise's take-home pay was $1,504 per month, the record reveals that $1,504 was Denise's take-home pay for only one month during which Denise worked over-time.

461 NW2d 122, 128 (SD 1990) (additional citation omitted).  Another factor a circuit court considers is "whether either party unreasonably prolonged the divorce." Zepeda v. Zepeda, 2001 SD 101, ¶28, 632 NW2d 48, 57.  *See also* Schwab v. Schwab, 505 NW2d 752, 756 (SD 1993).  In reviewing all factors, we observe that the case was not complicated or intricate, the pleadings were routine, briefing was not required, Brian admitted fault, and the actual litigation primarily involved a dispute over a pickup and alimony.  Under these circumstances, we see no abuse of discretion by the circuit court.

[¶19.]    Denise also moved this Court for appellate attorney fees.  Considering that Brian appealed to this Court essentially only arguing a discretionary issue, which required Denise to incur attorney fees on appeal, we award Denise $1,500.

[¶20.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.