#24843-aff in pt, rev in pt & rem-JKM

**2009 SD 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

REGAN RENEE HILL,                                    Plaintiff and Appellee,

v.

JONATHAN LEE HILL,                               Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

TERRI LEE WILLIAMS of
Gunderson, Palmer, Nelson
& Ashmore, LLP                                        Attorneys for plaintiff
Rapid City, South Dakota                         and appellee.

TIMOTHY R. JOHNS of
Johns & Kosel, Prof. LLC                         Attorneys for defendant
Lead, South Dakota                                   and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 12, 2009

OPINION FILED **03/18/09**

#24843

MEIERHENRY, Justice

[¶1.] This appeal involves a divorce action brought by Regan Hill (Regan) against Jonathan Hill (Jon). Jon appeals the trial court's child support determination, distribution of marital assets, and denial of alimony. We reverse and remand the child support determination and affirm the distribution of marital property and denial of alimony.

[¶2.] Jon and Regan Hill were married in 1994 in North Dakota. Jon was an electrical engineer at the time they were married. The couple originally located in Minnesota because of Jon's employment. There, Regan worked as a cashier and as a nurse's assistant. Regan eventually completed a degree in cellular biology and genetics in 1996 at the University of Minnesota. After a one-year deferment for the birth of the parties' first child in 1997, Regan entered medical school at the University of North Dakota Medical School. The family moved to North Dakota, and Jon's employer transferred him to North Dakota where he continued to be employed while Regan attended medical school. A second child was born in 2002.

[¶3.] Regan graduated from medical school in 2002 and entered a residency program in Obstetrics and Gynecology in Saginaw, Michigan. The couple decided on the location because the cost of living in Saginaw allowed Jon to quit his job and care for the children full time. Before moving to Michigan, Jon earned approximately $54,000 per year. During Regan's residency, the family lived on her income of $30,000 to $38,000 per year. Regan also took out student loans in the amount of $87,595 to pay for medical school and the living expenses of the family. The couples' third child was born in 2004, during Regan's residency. After

-1-

completing her residency in 2006, Regan accepted a position in Spearfish, South Dakota. At the time of trial, Regan earned approximately $285,000 annually as a physician, and Jon earned approximately $65,000 to $70,000 annually as an engineer.

[¶4.]      Regan filed for divorce on August 16, 2006, on grounds of mental cruelty or, in the alternative, irreconcilable differences. The couple eventually stipulated to a divorce on grounds of irreconcilable differences. They agreed to joint legal custody of the three children and primary physical custody with Regan. They also agreed on the child visitation schedule. The issues at trial were the amount of Jon's child support, Jon's request for alimony, and the division of property. On appeal, Jon claims that the trial court erred in setting child support without making any findings as to the actual needs and standard of living of the children. He also challenges the trial court's division of marital property and denial of alimony.

[¶5.]      Our standard of review is well-settled. We review the trial court's determination of child support, alimony and the division of property under an abuse of discretion standard. Billion v. Billion, 1996 SD 101, ¶14, 553 NW2d 226, 230 (citing Vander Pol v. Vander Pol, 484 NW2d 522 (SD 1992); Kanta v. Kanta, 479 NW2d 505 (SD 1991); Johnson v. Johnson, 471 NW2d 156 (SD 1991); Fox v. Fox, 467 NW2d 762 (SD 1991); Nelson v. Nelson, 454 NW2d 533 (SD 1990)). We review findings of fact under the clearly erroneous standard and questions of law de novo. Laird v. Laird, 2002 SD 99, ¶13, 650 NW2d 296, 299 (citations omitted). An abuse of discretion is "'a discretion exercised to an end or purpose not justified by, and

clearly against, reason and evidence.'" *Id.* (quoting *Billion,* 1996 SD 101, ¶14, 553 NW2d at 230).

### *Child Support Obligation*

[¶6.]        The court is required to set a child support obligation based on an income schedule established by the Legislature.  *See* SDCL 25-7-6.2.  According to SDCL 25-7-6.2, "the combined monthly net incomes of both parents shall be used in determining the obligation and divided proportionately between the parents based upon their respective net incomes."  The schedule currently provides obligation calculations up to a combined net monthly income of $10,000.  *Id.*  For a combined net monthly income above $10,000, "the child support obligation shall be established at an appropriate level, taking into account the actual needs and standard of living of the child."  SDCL 25-7-6.9.

[¶7.]        The parties' combined income exceeds $10,000.  The trial court set monthly child support at $750.[1]  Jon claims the trial court erred because its determination of a monthly child support amount of $750 was not based on the actual needs and standard of living of the children as required by SDCL 25-7-6.9.  A review of the trial court's findings shows that the court made no specific findings on the actual needs and standard of living of the children other than a general finding that "the [$750] amount is an appropriate amount taking into consideration the children's needs and standard of living."  Regan argues that even if the trial court

---

1.        According to the current schedule, the child support amount for a combined income of $10,000 for three children is $2,477.  Jon's 20% share would have been $495.40.

failed to set forth specific findings of fact, the error is harmless because the record contained evidence that supported the court's child support award.

[¶8.] We have consistently required adequate findings of fact regarding the child's needs and standard of living when a court sets support above the schedule's maximum. *See* McKittrick v. McKittrick, 2007 SD 44, ¶12, 732 NW2d 404, 409; *Laird*, 2002 SD 99, ¶13, 650 NW2d at 296; Watson-Wojewski v. Wojewski, 2000 SD 132, ¶¶17, 24, 617 NW2d 666, 670, 671 (citations omitted), *abrogated on other grounds by* Roberts v. Roberts, 2003 SD 75, 666 NW2d 477. With only limited findings, we are unable "'to make the appropriate calculations or render a meaningful review.'" *Watson-Wojewski*, 2000 SD 132, ¶19, 617 NW2d at 671 (citations omitted).

[¶9.] Here, the trial court's findings on child support are limited, and we are unable to determine if the $750 child support amount reflects the actual needs or standard of living of the children. *See* SDCL 25-7-6.9. Regan presented evidence of her monthly budgetary expenditures, including the cost of a live-in nanny. However, whether the expenses correlate to the child support amount is not apparent from the record, the findings of fact, or the conclusions of law. Consequently, we are unable to make a meaningful review. We reverse on this issue and remand for the trial court to enter specific findings as to the children's needs and standard of living and the correlation to the amount awarded.

[¶10.] Jon also contends that the trial court erred when it did not grant his request for abatement of his child support obligation during the months he has custody of the children for more than ten days. *See* SDCL 25-7-6.14. Since the trial

court did not specifically address the abatement request, the trial court may consider Jon's request on remand.

***Property Division and Alimony***

[¶11.]     Jon claims that the trial court erred in its division of the marital assets and denial of alimony. We review the trial court's property division and alimony determinations jointly. Terca v. Terca, 2008 SD 99, ¶28, 757 NW2d 319, 326 (citing Evans v. Evans, 1997 SD 16, ¶31, 559 NW2d 240, 247). "The symbiotic relationship between property division and spousal support requires consideration of the two together, as an award of more assets can eliminate or reduce the need for spousal support and vice versa." *Id*. (citing Heckenlaible v. Heckenlaible, 1996 SD 32, ¶20, 545 NW2d 481, 485).

[¶12.]     The trial court valued the marital assets at $74,829 and the debts at $111,160. A large portion of the debt was attributable to Regan's student loans of $87,595. The court awarded Regan $19,336 in assets and $103,160 in debts. Jon received $55,493 in assets and $8,000 in debts. Jon claims that the trial court abused its discretion when it adopted Regan's values and proposed distribution of marital assets.

[¶13.]     Jon cites error in the trial court's valuation of certain property including, but not limited to, guns, a home theater receiver, and a hydraulic jack. He also claims the closing costs of the house sale should not have been included in the marital estate and that the debt of the van awarded to Regan was incorrectly valued from an earlier date rather than at the date of trial.

[¶14.]     We review a trial court's distribution of assets under an abuse of discretion standard. *Johnson v. Johnson*, 2007 SD 56, ¶16, 734 NW2d 801, 806 (quoting *Grode v. Grode*, 1996 SD 15, ¶6, 543 NW2d 795, 799). "'The valuation of property involved in a divorce proceeding will not be overturned unless it is clearly erroneous.'" *Id.* (quoting *Priebe v. Priebe*, 1996 SD 136, ¶8, 556 NW2d 78, 80). We will normally not overturn the trial court's valuation of assets if the valuation falls "within a reasonable range of figures," based on the evidence presented at trial. *Id.* ¶37, 734 NW2d at 810-11 (quoting *DeVries v. DeVries*, 519 NW2d 73, 75 (SD 1994)). "[A] trial court is not required to accept either party's proposed valuation, but the value must be within the range of evidence presented to the court." *Id.* (citing *DeVries*, 519 NW2d at 76). The trial court determined that the property values offered by Regan were more persuasive. The trial court's value was within a reasonable range based on the evidence. Even assuming that the date of the van loan was in error, Jon has shown no prejudice since the van and its accompanying debt were both distributed to Regan.

[¶15.]     Jon's main complaint is the inclusion of Regan's medical school loans in the marital estate. Jon claims that since the value of Regan's medical degree cannot be considered marital property, neither should her medical school loans. In support of his argument, Jon relies on *Ryken v. Ryken*, wherein we determined that the husband's business debt should be excluded from the marital estate because the businesses themselves were excluded. 461 NW2d 122, 126 (SD 1990). We held that "[i]t stands to reason since the value of these businesses was not included in the list of assets to be divided, the debt attributable to these businesses should not be

included so as to reduce the total value of the marital property." *Id.* We have not applied this same reasoning to student loan debts acquired during the marriage. *See* Saint-Pierre v. Saint-Pierre, 357 NW2d 250 (SD 1984).

[¶16.] In *Wehrkamp v. Wehrkamp*, we determined that an educational degree cannot be viewed as property subject to division. 357 NW2d 264, 266 (SD 1984); *see also Saint-Pierre*, 357 NW2d at 259-60. "The factors and variables involved in such a consideration are simply too speculative and could only act to turn the possibility of inequity on the one hand into a probability of such on the other." *Wehrkamp*, 357 NW2d at 266. In *Saint-Pierre*, we determined it was not an abuse of discretion to include the parties' educational debt in the division of marital property and award the debt to the party who accumulated the debt. 357 NW2d at 256.

[¶17.] The law requires the court to make an equitable division of property, regardless of who owns the property. SDCL 25-4-44. The court included Regan's student loans as part of the marital estate but assigned the loans to Regan in the division. The loans were incurred during the marriage and were used, along with Regan's salary, to support the family during Regan's residency. Consequently, based on the evidence, the trial court did not abuse its discretion by including the student loans as marital debt.

[¶18.] Likewise, Jon has shown no abuse of discretion in the trial court's division of property. We have said that the trial court should consider the following factors when making an equitable division of property:

> (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6)

the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

Novak v. Novak, 2006 SD 34, ¶4, 713 NW2d 551, 552 (citing *Billion,* 1996 SD 101, ¶21, 553 NW2d at 232).

[¶19.]        In dividing the property, the trial court considered all the relevant factors.  Regan was 34 years old, and Jon was 37 at the time of divorce.  The parties were married for approximately fourteen years.  The court also determined that both parties were in good health with few health problems, other than Regan's congenital optic nerve atrophy.  The court found that the parties were both competent to earn a living.  The parties did not accumulate significant property during the marriage and none of their assets were income-producing.  After considering all the factors, the trial court awarded Jon $55,493 in assets and an $8,000 car loan.  Regan received $19,336 in assets and the remainder of the marital debt, $103,160.

[¶20.]         Together with Jon's property division challenge, Jon argues that the court erred when it did not award him permanent, rehabilitative, or restitutional alimony.  To receive an award of permanent alimony, Jon must prove the need for support and that Regan had "'sufficient means and abilities to provide for part or all of that need.'"  *See* Clark v. Clark, 2008 SD 59, ¶10, 753 NW2d 423, 427 (quoting Dejong v. Dejong, 2003 SD 77, ¶7, 666 NW2d 464, 467).  Factors to consider in awarding alimony include: "the length of the marriage, earning capacity of the parties, financial condition after the property division, age, health and physical

condition of the parties, the parties' station in life or social standing, and fault." Wilson v. Wilson, 434 NW2d 742, 745 (SD 1989) (citations omitted).

[¶21.] In addition, the court may also consider awarding restitutional (reimbursement) or rehabilitative alimony. Restitutional alimony is awarded to "'reimburse one spouse's contribution during the marriage to advance training or education of the other spouse.'" Sanford v. Sanford, 2005 SD 34, ¶24, 694 NW2d 283, 290 (quoting Saxvik v. Saxvik, 1996 SD 18, ¶13, 544 NW2d 177, 180). Rehabilitative alimony is awarded "to permit a spouse the means necessary to enable the spouse to refresh or enhance job skills necessary to become self-sufficient, and provide needed financial support." Id. (quoting Saxvik, 1996 SD 18, ¶14, 544 NW2d at 180). The court must consider additional factors for an award of restitutional or rehabilitative alimony. Factors for restitutional or rehabilitative alimony include "the amount of the supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the nonsupporting spouse's professional education." Wilson, 434 NW2d at 745 (quoting Saint-Pierre, 357 NW2d at 262).

[¶22.] The court considered the alimony factors and entered findings as to each. Regan was 34 years old and physically healthy except for optic nerve atrophy, a condition which could eventually harm her vision. Jon was 37 at the time of the divorce and physically healthy with his asthma and allergies controlled by medication. The parties' marriage lasted approximately fourteen years. Both parties were found to be competent to earn a living, and Jon only received a car loan

debt from the property division. The court also found Jon at fault for the dissolution of the marriage.

[¶23.]    Jon argues that the trial court erred by allocating fault for the dissolution of the marriage to him. Jon alleged that Regan threatened him with divorce throughout the marriage and that she was emotionally abusive to him. He contends that the court needed to address Regan's fault. We have determined that "[i]n a bench trial, the circuit court is the finder of fact and sole judge of credibility." Osman v. Karlen and Assoc., 2008 SD 16, ¶30, 746 NW2d 437, 445. Here, the divorce court had the opportunity to listen to the testimony of Regan and Jon. The court weighed the testimony and evidence and determined that Jon's actions caused the dissolution of the marriage. Jon admitted in direct examination that the reason for the divorce was his inappropriate conduct to Regan. Based on the evidence, the court's finding of fault was not clearly erroneous. In addition to fault, the trial court considered all the other factors and concluded that Jon had not shown a need for permanent alimony. Jon was a 37 year-old electrical engineer making $65,000 to $70,000 annually. He was in good health. He received $55,493 in assets from the marriage and debt of only an $8,000 car loan. Based on the evidence, the trial court did not abuse its discretion when it refused to award Jon permanent alimony.

[¶24.]    Jon also presented evidence to support his request for rehabilitative alimony. Jon testified that he intended to pursue an MBA to improve his earning capacity and to allow him to move into a management position within his company. He testified that programs typically cost $7,000 to $15,000, for tuition alone. However, Jon indicated that since he would need to take part-time classes, the

tuition would likely cost between $15,000 and $20,000. Jon did not, however, provide any information about his educational plan other than tuition amounts that he found on the internet.

[¶25.]	The trial court denied Jon's request for rehabilitative alimony. The trial court found that Jon had not shown that he could earn more income with an MBA nor that he sacrificed his career or missed opportunities to enhance Regan's career. The court found that "Jon has not shown a need for alimony," or a need for further education. The court further determined that "Jon did not show he had an educational plan." Based on the evidence, the trial court did not abuse its discretion in denying rehabilitative alimony.

[¶26.]	In addition, Jon claimed restitutional alimony in the amount of $139,211.50. Normally restitutional alimony is to "'reimburse one spouse's contribution during the marriage to advance training or education of the other spouse.'" *Sanford*, 2005 SD 34, ¶24, 694 NW2d at 290 (quoting *Saxvik*, 1996 SD 18, ¶13, 544 NW2d at 180). Jon claims that his contribution to the advancement of Regan's medical education was potential lost equity in a house and the decreased value of his retirement account. Jon claimed that if he had bought a house in North Dakota, instead of quitting his job and moving to Michigan for Regan's residency program, that he would have approximately $120,000 in equity in a house. In addition, Jon claims that his retirement account would have continued to grow had he not taken time off from work to be with the children while Regan finished her residency. The trial court determined that "both of these theories and the testimony offered are speculative and do not support a finding of restitutional

alimony." Although a novel approach, a claim of lost equity in an un-purchased, unidentified house was appropriately characterized by the trial court as speculative and insufficient to support a claim for restitutional alimony. Likewise, the trial court determined that Jon provided insufficient evidence to support his claim of lost value in his retirement account. The only testimony was from Jon who relied on averages and estimates of potential pay increases had he continued to work. We give deference to the trial court on judging the credibility of the witnesses and weighing their testimony. Walker v. Walker, 2006 SD 68, ¶11, 720 NW2d 67, 70-71 (quoting Midzak v. Midzak, 2005 SD 58, ¶14, 697 NW2d 733, 737-38). Based on this standard of review, Jon has not shown that the trial court was clearly erroneous. Consequently, because of the speculative nature of Jon's evidence, the trial court did not abuse its discretion in denying restitutional alimony.

***Attorney Fees on Appeal***

[¶27.]        Both Jon and Regan request attorney's fees on appeal. "'SDCL 15-17-38 provides that attorney fees may be granted in cases of domestic relations and support.'" Christensen v. Christensen, 2003 SD 137, ¶27, 672 NW2d 466, 475 (quoting Jacobson v. Jacobson, 2000 SD 60, ¶30, 611 NW2d 210, 217). "In determining if a party is entitled to attorney fees, we consider property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case." *Id.* (quoting Pesicka v. Pesicka, 2000 SD 137, ¶20, 618 NW2d 725, 728). Taking into consideration the fact that Regan earns significantly more income than Jon and that we are reversing the child support determination, we grant Jon's motion in the amount of $5,000.

#24843

[¶28.]     We reverse and remand the child support determination and affirm the remaining issues.

[¶29.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.