#25044-aff in pt, rev in pt & rem-JKM

**2009 SD 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AMY ANNE HAANEN,                                        Plaintiff and Appellee,

    v.

JEFFREY J. HAANEN,                                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

ROGER W. ELLYSON                          Attorney for plaintiff
Watertown, South Dakota                    and appellee.


MARY H. BURD and
LEE R. BURD
Burd Law Office                                   Attorneys for defendant
Sioux Falls, South Dakota                     and appellant.


KAREN GANGLE
Sisseton, South Dakota

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 26, 2009

OPINION FILED **07/15/09**

#25044

MEIERHENRY, Justice

[¶1.] Jeffery J. Haanen appeals a divorce judgment from Amy Anne Haanen. Jeff raises three issues on appeal; he claims that the trial court erred when it: (1) awarded primary physical custody of the children to Amy, (2) awarded alimony to Amy, and (3) incorrectly calculated child support. We affirm in part and reverse in part.

***Custody***

[¶2.] The parties were married in July of 1993. Their marriage was a troubled one involving abusive behavior, drug and gambling addictions, and neglect of their three children. The parties' three children were born in 1991, 1994, and 2003. The parties lived in a house owned by Jeff's parents throughout the marriage until the parties separated in July of 2005. Amy testified that approximately one month after the parties' marriage, Jeff became verbally and physically abusive to her. The parties separated for approximately thirteen months beginning in 1996. Amy attributes this separation to Jeff's abuse. The parties reconciled in 1997, but the marriage continued to be dysfunctional. Amy testified that Jeff continued his verbal and physical abuse in the presence of the children and members of her family and also destroyed much of the parties' property. Both parties used drugs and gambled during the marriage. Jeff suffered from an extreme gambling addiction and lost large amounts of money. Jeff began to use methamphetamine in the fall of 2001 and continued his use for over three years. Jeff also introduced Amy to methamphetamine. Both parties became addicted to the drug.

[¶3.]     At the height of the parties' addictions in 2005, the State of South Dakota brought an Abuse and Neglect action regarding the parties' three children. The State eventually removed the children from Amy and Jeff's care and placed them with Jeff's parents. Amy initiated this divorce proceeding in September of 2005. She rented a three-bedroom duplex, and Jeff continued to reside in the marital home owned by his parents. After Jeff and Amy both successfully completed drug treatment, the children were returned to the parties' custody in July 2006. They shared custody of the children on alternating weeks from July 2006 until the divorce trial in April 2008.

[¶4.]     In the Judgment and Decree of Divorce, the trial court awarded the parties joint legal custody of the three minor children with Amy granted primary physical custody subject to liberal visitation with Jeff. In determining child custody, the court is guided by the best interest of the child standard. SDCL 25-4-45. The law provides:

> In an action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same. In awarding the custody of a child, *the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare.* If the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question. As between parents adversely claiming the custody, neither parent may be given preference over the other in determining custody.

*Id.* (emphasis added). If it is in the best interest of the child, the court may order joint legal custody as follows:

> In any custody dispute between parents, the court may order joint legal custody so that both parents retain full parental

rights and responsibilities with respect to their child and so that both parents must confer on major decisions affecting the welfare of the child. In ordering joint legal custody, the court may consider the expressed desires of the parents and may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those aspects between the parties based on the best interest of the child. If it appears to the court to be in the best interest of the child, the court may order, or the parties may agree, how any such responsibility shall be divided. Such areas of responsibility may include primary physical residence, education, medical and dental care, and any other responsibilities which the court finds unique to a particular family or in the best interest of the child.

SDCL 25-5-7.1.

[¶5.] On review, we give trial courts "broad discretion in deciding the best interests of a child; their decisions will only be disturbed upon a finding of abuse of discretion." Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶22, 591 NW2d 798, 806 (citations omitted); *see also* Hill v. Hill, 2009 SD 18, ¶5, 763 NW2d 818, 822 (citations omitted); Maxner v. Maxner, 2007 SD 30, ¶12, 730 NW2d 619, 622 (citations omitted). An abuse of discretion is "'discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Hill*, 2009 SD 18, ¶5, 763 NW2d at 822 (quoting Laird v. Laird, 2002 SD 99, ¶13, 650 NW2d 296, 299). We defer to the trial court's judgment on "the credibility of the witnesses" and the weight to attribute to their testimony. *Fuerstenberg*, 1999 SD 35, ¶22, 591 NW2d at 807 (citing Kost v. Kost, 515 NW2d 209, 212 (SD 1994)). Factors that may guide the court in determining the best interest of the child include fitness of the parents, stability, primary caretaker status, child's preference, harmful parental misconduct, separating siblings, and substantial change in circumstances. *Id.* ¶¶23-34, 591 NW2d at 807-10.

[¶6.]     In determining what was in the best interest of the children, the court heard testimony of the parties and other fact witnesses in addition to the expert testimony and report of the custody evaluator, who was jointly retained by the parties. The trial court entered numerous findings of fact in addition to a written decision. The court found that both parties were "capable of providing adequate parenting for their three children and that both [were] fit parents." The court noted that the two older children expressed a preference to live with Jeff. However, the court also observed that Jeff had "tried hard to gain favor with the children" since completing his treatment program as evidenced by "purchases for the children beyond necessities." The court further noted that Jeff's purchases "may explain why living with Jeff and maintaining the life style they had in the past is desired by the children."

[¶7.]     Both parties presented evidence of the other's misconduct. Jeff had hired a private detective for $17,000, who testified to two incidents involving Amy's drinking. One incident involved Amy drinking several drinks at a local bar over a four hour period of time, and the other incident involved drinking at her sister's bachelorette party. Neither of these incidents occurred while Amy cared for the children or in the children's presence. Although Jeff presented other evidence of Amy's misconduct, the court found the testimony was not credible. Amy presented evidence of "many incidents" of Jeff's anger and rage during the marriage that had occurred in their residence with the children present. The court found that the stability factor "slightly favored" Jeff only because he continued to reside in the family residence. The court determined that the primary caretaker factor currently

favored neither parent because the parties shared custody; however, Amy had been the primary caretaker during the course of the marriage until the parties became addicted to methamphetamine. Additionally, the court considered separating the siblings but found "no good reason" to do so.

[¶8.]     Although the custody evaluation had been completed almost a year before the trial, the court determined based on the evidence presented at trial that there would not have been "a great deal of new information to be considered, other than that the parties have abstained from the use of methamphetamine during this time." The court observed that the evidence presented "a close decision." The court ultimately agreed with the recommendation of the custody evaluator who indicated that the "most conservative course of action in his opinion would be to have Amy function in the capacity as primary custodial parent with Jeff having liberal visitation rights."

[¶9.]     Jeff claims that the court erroneously relied on the custody evaluation in making its decision to award custody to Amy. Jeff argues that the custody evaluation was unreliable because it was over a year old at the time of trial, and did not take into consideration more recent events. Jeff claims that the court should have given more weight to evidence of Amy's continued substance abuse, the months of shared custody, and the children's attachment to and preference for him.

[¶10.]     In order for Jeff to prevail, we would have to find that the trial court abused its discretion. Our review of the record and the court's analysis of the evidence does not show an abuse of discretion. This was a very close case, as the trial court noted. The court took into consideration the timing of the evaluation and

what had happened since the evaluation had been completed. Although the report had not been updated, subsequent behaviors and changes were admitted into evidence and considered by the court. Evidence showed that both parents were fit and capable of parenting the children. Yet, the specter of successful recovery from the methamphetamine addiction loomed in the background for both parents. Their continued recovery and Jeff's anger and rage during the marriage were a concern to the court. *See* South Dakota Visitation Guidelines, Appendix to SDCL 24-4A, 1.16(B) ("[w]itnessing spouse abuse has long-term, emotionally detrimental effects on children.") As a reviewing court, we are not in a position to second guess the trial court or substitute our judgment. We defer to the court's discretion because the trial court was in the better position to judge the credibility of the witnesses and weigh their testimony. *Fuerstenberg*, 1999 SD 35, ¶22, 591 NW2d at 806 (citing *Kost,* 515 NW2d at 212). Consequently, based on the record and the trial court's analysis, we find no abuse of discretion and affirm the court's custody determination.

### *Alimony*

[¶11.]     The trial court awarded Amy supportive alimony in the amount of $400 per month. Jeff claims that the court "impermissibly intermingled sums needed to support the children with [Amy's] own expenses" in awarding alimony. Jeff also claims that the alimony was impermissibly used to equalize the parties' net monthly incomes, that alimony was not ordered to cease upon Amy's death, and that supportive alimony award was inappropriate given Amy's age and education. Amy argues that the alimony amount is necessary to maintain her standard of

living and is equitable considering Jeff's fault in causing the divorce. We agree with Jeff that there are problems with the trial court's award of alimony.

[¶12.] We review alimony determinations under the abuse of discretion standard. *Hill*, 2009 SD 18, ¶5, 763 NW2d at 822 (citation omitted). Amy had the burden of showing the need for support and that Jeff had "sufficient means and abilities to provide for part or all of that need." *Id.* ¶20, 763 NW2d at 825 (citations omitted). The South Dakota legislature provides for spousal support allowances in a divorce as follows:

> Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented: and the court may from time to time modify its orders in these respects.

SDCL 25-4-41. In determining what constitutes a "just" "suitable allowance" with "regard to the circumstances of the parties," this Court has recognized several factors for a court to consider. Those factors include: "'the length of the marriage, earning capacity of the parties, financial condition after the property division, age, health and physical condition of the parties, the parties' station in life or social standing, and fault.'" *Hill*, 2009 SD 18, ¶20, 763 NW2d at 825 (quoting Wilson v. Wilson*, 434 NW2d 742, 745 (SD 1989)).

[¶13.] One of Jeff's arguments is that Amy's age and education should preclude her from receiving supportive alimony. At the time of trial, Jeff was 42 years of age, Amy was 35. Amy received a college degree during the marriage and taught school for several years. She, however, had worked in a part-time job earning less than minimum wage since she completed drug treatment. Jeff was

taking classes to complete a college degree and earned his income through farming and driving truck. He generally complains of the inequity in requiring him to pay alimony, attorney fees, and the majority of the marital debt while Amy has a better education and was not working at her potential earning ability. He argues that his alleged fault should not outweigh these other factors. The court's findings of fact show that the court considered all of the evidence in regard to the factors and circumstances of the parties. Although the court found that Jeff was "more at fault in the termination of the marriage," the court did not base its opinion solely on the fault factor in disregard of the other factors.

[¶14.] The relative earning capacity and age of the parties are two of the factors a court may consider in determining if an alimony award is justified. The court did not consider the two factors in isolation but weighed them along with all the other relevant factors and circumstances of the parties. The court also noted that "[i]f circumstances change, either party [can] move for modification of that [alimony] amount." We do find error in the way the court considered the factors.

[¶15.] There is a problem with the court's consideration of Amy's need for alimony. We recently reiterated the importance of considering child support and alimony as "separate concepts." Clark v. Clark, 2008 SD 59, ¶14, 753 NW2d 423, 427 (citation omitted). We said:

> In *Schabauer v. Schabauer,* 2003 SD 146, ¶17, 673 NW2d 274, 278, this Court noted "that alimony and child support are separate concepts. Child support provides for the maintenance of the children while alimony represents a suitable allowance to a party for his/her support." Because the circuit court considered the number of children and the children's standard of living in making an award of alimony, we reversed noting, "the amount of [wife's] alimony should not have been governed

by the presence of children in her household or their needs and standard of living." *Id.* ¶18. "Rather, the amount should have reflected what was required for a suitable allowance to [wife] based upon an analysis of the factors applicable to awarding alimony." *Id.* This Court instructed:

> Alimony and child support must be considered separately, and [husband's] parental responsibility to provide for the maintenance of his children on the basis of the factors applicable to setting child support should not have been interwoven with his marital obligation to provide a suitable allowance for [wife's] support.

*Id.*

*Clark*, 2008 SD 59, ¶14, 753 NW2d at 427-28.

[¶16.]     Amy introduced into evidence a monthly budget to show that she needed supportive alimony. Her submitted monthly budget totaled $3,878 and included expenses for the children. The budget included amounts of $600 for groceries; $200 for clothing, shoes, and sport accessories; $250 for school supplies, fees, events, lunches, and recreation; $800 for medical insurance; and $300 for medical and dental not covered by insurance. Recognizing that her budget included expenses for the children, the court reduced Amy's budget by the amount of child support in the amount of $752. Because we are reversing the calculation of child support, this figure may no longer be accurate. Also, we question this method of determining Amy's budget because it may not accurately reflect her individual need for support and because alimony amounts must necessarily be determined before child support is calculated as noted *infra*, ¶19 of this opinion.

[¶17.]     Rather than determine what constituted a suitable allowance for Amy, the court then applied an equalization of income approach. The court noted that "there will still be an approximate $700 difference in [Jeff and Amy's] monthly net incomes." The court then split the difference by awarding Amy $400 in alimony.

Although some jurisdictions allow equalization of income under certain circumstances as a factor in awarding alimony, South Dakota law does not. *See* Stone v. Stone, 488 SE2d 15, 18-19 (WVa 1997) (noting courts are divided regarding whether to use alimony to equalize income but declined to adopt the approach because of no clear legislative intent in West Virginia statutes).

[¶18.] We have emphasized that the purpose of alimony "is an allowance for support and maintenance, having as '. . . its sole object the provision of food, clothing, habitation, and other necessaries for the support of a *spouse*.'" *Wilson*, 434 NW2d at 744 (emphasis added) (citing 24 AmJur2d Divorce and Separation §520 (1983)). The purpose of alimony is not to equalize incomes but rather to support the needs and standard of living of the spouse. Here the record does not indicate what expenses Amy incurred for her own needs on a monthly basis. Consequently, the trial court's manner of determining the need for alimony and setting the amount is in error. Therefore, we remand for the trial court to reconsider the alimony award based on Amy's needs and standard of living and Jeff's ability to pay. If an alimony amount is awarded on remand, the language in the judgment should conform to the court's findings.

***Child Support***

[¶19.] The trial court set child support at $752 per month. Jeff argues that the trial court erred in how it calculated the support amount. Specifically, he points out that the court failed to include the alimony payment as income to Amy and failed to deduct the alimony payment from Jeff's income. We agree. We determined in *Peterson v. Peterson* that "[i]n order to properly calculate child support, *all* of the

monies available for the support of both parents must be considered." 2000 SD 58, ¶26, 610 NW2d 69, 73. We said:

> The deductions allowed from gross monthly income to arrive at each parent's net monthly income for purposes of calculating child support are listed in SDCL 25-7-6.7. Among the allowable deductions are "[p]ayments made on *other* support and maintenance orders." Since alimony is a payment for the support and maintenance of a dependent spouse, it is deducted from the payor's gross monthly income as another support and maintenance order.

*Id.* ¶16 (internal citations omitted). Therefore, we reverse and remand to recalculate child support and to include any alimony award in Amy's income and deduct the alimony payment from Jeff"s.

[¶20.]    We affirm the trial court's custody determination and reverse and remand for the trial court to determine whether alimony is appropriately based on Amy's own monthly expenses, excluding the expenses of the children, and to recalculate child support based on the alimony determination. Both parties' requests for appellate attorney's fees are denied.

[¶21.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.