#27150-a-GAS

**2015 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| DOROTHEA ANDERSON, | Plaintiff and Appellee, |
| v. | |
| JOHN ANDERSON, | Defendant and Appellant. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK SMITH
Judge

* * * *

| | |
|---|---|
| DAVA A. WERMERS<br>Mitchell, South Dakota | Attorney for plaintiff<br>and appellee. |
| | |
| CHRIS A. NIPE of<br>Larson & Nipe<br>Mitchell, South Dakota | Attorneys for defendant<br>and appellant. |

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **05/06/15**

SEVERSON, Justice

[¶1.]     Dorothea Anderson and John Anderson obtained a divorce.  The circuit court divided the marital assets, including land and cash that John had inherited from his mother during the marriage.  The court also awarded Dorothea child support.  John appeals.  We affirm.

## Background

[¶2.]     Dorothea and John married in 1996 and separated in 2012.  They both brought vehicles into the marriage but no other assets of value.  Neither party brought debt into the marriage.  They have three children who were 16, 11, and 9 at the time of the divorce.  They lived with John's parents until 2003 or 2004 when they acquired their marital home.  John farmed and worked full time at Scott Supply.  Dorothea took care of the home and children.  She also worked at a restaurant before obtaining full-time employment as a paraprofessional at a local school where she continued to work at the time of the divorce hearing.  Dorothea helped with various aspects of the farm such as running errands and serving as bookkeeper.  Throughout the marriage both parties placed their income into a joint checking account.  No money or property was kept separate by either party.  The disputed property in this case is two quarters of land, inherited cash, and cash taken by Dorothea upon separation of the parties.

[¶3.]     The circuit court determined that the parties' farmland, consisting of two quarter sections, referred to as the SE 1/4 and NE 1/4, was a marital asset subject to equitable division.  John's mother gifted the SE 1/4 in 2004.  At John's suggestion, his mother put Dorothea's name on the deed, despite the strain

Dorothea caused on the relationship between John and his mother. In 2007, John's mother passed away. She bequeathed him the NE 1/4 and $91,296. The circuit court noted that the SE 1/4 had been obtained eight years into the marriage, and they received the NE 1/4 eleven years into the marriage. Further, the court found that John had minimized Dorothea's contributions to the farming operation and improvement of the real estate. It found that her management of the home and children provided John with the time he needed to perform farming tasks and that her money went into the joint checking account to pay farm-related expenses and taxes. Therefore, the court included the land in the marital property, concluding that Dorothea's contributions were more than de minimis and that she had need for the financial support the asset can provide. The court determined that each party would retain an undivided one half interest in the real estate as tenants in common. It gave John the option, for six months, to purchase Dorothea's share of the property for its current appraisal value. Neither party could dispose of the land or bring an action for partition until his option expired. The court did this in recognition of John's family history associated with the land and in an effort to keep the farm intact.

[¶4.]        The court did not include in the marital estate the sum of $10,000, which Dorothea had withdrawn from the joint account at the time of the parties' separation. The court found that the money no longer existed. It also found that John had used marital assets during the separation—specifically the marital household and farm. Therefore, the $10,000 was determined to be a non-marital asset, as were the 2012 and 2013 crops, which were in storage at the time of trial.

John asked the court to require Dorothea to repay him $91,296—the amount he inherited from his mother. He asserted that it should be considered a marital debt owed by Dorothea to him. The court noted that the money went into the joint checking account, had been spent on family needs, and it was not a debt. The amount was never to be repaid to the estate of John's mother, and there was no evidence that John exercised exclusive control and possession of the money. Lastly, there was no evidence that the parties entered into a debtor/creditor relationship where Dorothea agreed to repay John for any money she may have spent. Given that the asset did not exist, and there was no marital debt arising from it, the court did not consider the sum in the property division.

[¶5.] The parties agreed to joint custody of the children, and the court ordered John to pay child support in the amount of $351 per month. Prior to John's child support obligation, neither party had paid child support to the other during the separation period. John appeals raising the following issues:

1. Whether the circuit court erred by including inherited and gifted land as a marital asset.

2. Whether the court erred by failing to make an adjustment for cash taken by Dorothea at the time of separation.

3. Whether the court erred by failing to make an adjustment to the property division for cash inherited from John's mother.

4. Whether the court erred by ordering John to pay child support.

## Analysis

*Inherited and gifted farmland*

[¶6.]        SDCL 25-4-44 provides: "When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife.  In making such division of the property, the court shall have regard for equity and the circumstances of the parties."  "In arriving at an equitable division of property, a circuit court must classify property as 'marital' or 'non-marital.'"  *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 10, 775 N.W.2d 210, 215 (*Halbersma II).*  "A circuit court has broad discretion in determining whether property is marital or non-marital."  *Id.*  "Only where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as 'non-marital' property."  *Novak v. Novak*, 2006 S.D. 34, ¶ 5, 713 N.W.2d 551, 552-53.  "We review the [circuit] court's determination of child support . . . and the division of property under an abuse of discretion standard."  *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822.  Findings of fact are reviewed under the clearly erroneous standard.  *Id.*

[¶7.]        We have explained that "inherited property 'is not ipso facto excluded from consideration in the overall division of property.'"  *Novak*, 2006 S.D. 34, ¶ 5, 713 N.W.2d at 553 (quoting *Billion v. Billion*, 1996 S.D. 101, ¶ 20, 553 N.W.2d 226, 232).  Further, "this Court has consistently held that the [circuit] court has discretion in determining how to consider *premarital assets and gifts during a marriage*; whether to include or exclude them from the marital estate.'"  *Billion*,

1996 S.D. 101, ¶ 20, 553 N.W.2d at 232 (quoting *Strickland v. Strickland*, 470 N.W.2d 832, 836 (S.D. 1991)) (internal quotation marks omitted). The circuit court should consider the following factors when dividing property and when determining whether inherited property is a marital asset: "(1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets." *Novak*, 2006 S.D. 34, ¶ 4, 713 N.W.2d at 552. "In evaluating the seven principal factors listed above, a circuit court may consider other evidence to determine whether inherited or gifted property should be excluded from the marital estate, including the origin and treatment of inherited or gifted property and the direct or indirect contributions of each party to the accumulation and maintenance of the property." *Halbersma II*, 2009 S.D. 98, ¶ 12, 775 N.W.2d at 215.

[¶8.]        John's main contentions are that Dorothea did not contribute to the acquisition of the two quarters and that she did not bring any assets into the marriage through inheritance. He maintains that he should have been granted the land, even though he recognizes that "[t]his Court has consistently held that a homemaker's contribution to the family's upkeep is valuable and must be considered as no less significant and substantial to the accumulation of marital property than the other spouse's labor outside the home." *Terca v. Terca*, 2008 S.D. 99, ¶ 25, 757 N.W.2d 319, 326. He contends that a homemaker's contribution is only relevant if the parties "had jointly acquired the property in question." We

reject such a notion, as it is clearly contrary to our case law. "South Dakota is an 'all property state' which results in all property of both of the divorcing parties being subject to equitable division by the [circuit] court, regardless of title or origin." *Billion*, 1996 S.D. 101, ¶ 61, 553 N.W.2d at 237. It is well within the court's discretion to determine which property is marital or non-marital, and we will not overturn such a decision absent an abuse of discretion.

[¶9.] John's analysis improperly focuses solely on the sixth factor to be considered by the circuit court when dividing property. Even assuming that Dorothea made de minimis contributions to the accumulation of the property, the lack of such contributions would not automatically result in an exclusion of the property from the marital estate. "[N]o one factor should be determinative in cases where the circuit court equitably divides property under SDCL 25-4-4[4]." *Halbersma II*, 2009 S.D. 98, ¶ 19, 775 N.W.2d at 217. In determining that the two quarters were subject to division, the court properly considered the factors we have named. It noted that the parties were married for nearly seventeen years. The SE 1/4 was deeded to both parties eight and one-half years into the marriage, and the NE 1/4 was acquired eleven years into the marriage. It noted that those "timeframes weigh in favor of including the parcels in the marital estate." The court further found that the parties possessed property with a gross value of $1.9 million, which is "almost exclusively bound up in the real estate." The farmland is the only asset they have which is capable of producing income. John is 48 years old and in fairly good health with minimal problems with his back along with high blood pressure. Dorothea is 44 years old and in good health. Both parties have a

capacity to earn a living. Further, "Dorothea's management of the home and children afforded John the time he needed to maintain the farm equipment, plant crops, harvest crops, and other similar tasks." There is no indication that the court's findings are clearly erroneous or that it abused its discretion when it determined the land to be marital property.

[¶10.]     John asserts that he does not have the assets to buy the land from Dorothea and that division of the land will "destroy" his family farm. John correctly points out that the South Dakota Legislature "recognizes the importance of the family farm to the economic and moral stability of the state[.]" SDCL 47-9A-1. However, recognition of the value of family farms does not insulate farmland from being subject to equitable division pursuant to a divorce. *See* SDCL 25-4-44. John summarizes a variety of cases where this Court has addressed farmland as a marital asset. However, none of the cases he cites stand for the proposition that inherited or gifted land is automatically excluded from consideration during property division. The common holding in all the cases cited is that the lower court has discretion to divide property.[1] In one of the cases cited, the circuit court awarded all the real property to one spouse so that he could "continue to operate [the] farm as an ongoing, economically solvent enterprise in order to support himself and provide for the children." *Hanson v. Hanson*, 252 N.W.2d 907, 909

---

1.     *See Terca*, 2008 S.D. 99, ¶¶ 18-21, 757 N.W.2d at 324-25; *Pellegrin v. Pellegrin*, 1998 S.D. 19, ¶ 19, 574 N.W.2d 644, 648; *Grode v. Grode*, 1996 S.D. 15, ¶ 20, 543 N.W.2d 795, 801; *Korzan v. Korzan*, 488 N.W.2d 689, 691 (S.D. 1992); *Balvin v. Balvin*, 301 N.W.2d 678, 680 (S.D. 1981); *Andera v. Andera*, 277 N.W.2d 725, 728 (S.D. 1979); *Hanson v. Hanson*, 252 N.W.2d 907, 908 (S.D. 1977).

(S.D. 1977). This Court reversed and remanded for a more equitable division regarding certain other assets. *Id.* We noted: "If [a more equitable division] cannot be done, the court must acknowledge that an equitable division of the property is paramount to defendant's interest in keeping the ranch intact." *Id.* at 910.

[¶11.] In this case, the circuit court recognized the importance of the farm, and granted John the option to purchase the land. It stated:

> In an effort to keep the farm intact and in recognition of John's long family history associated with ownership of these two 1/4 sections (SE and NE), John shall first be granted by this court, before any other disposal of this property or action for partition, the opportunity to purchase from Dorothea her share of this property for the current appraised value of $685,450.00.

John contends that this option would only be meaningful if he had the assets to buy the property, and that it is no different than granting him the land and requiring him to pay Dorothea in cash. He asserts that the court could have instead given him a credit for the value of the property he received through inheritance or placed the land in trust for the children. Such contentions are based on the erroneous assumption that the land is not a marital asset. The court did not abuse its discretion by determining the property was a marital asset and dividing it as such between the parties.

*Cash taken by Dorothea after separation*

[¶12.] Upon separation of the parties, Dorothea moved from the marital home and withdrew $10,000 from the parties' joint account. The court found that the money no longer exists and, as a result, did not include the sum as marital property. John asserts that Dorothea's interest in marital property should be reduced by $10,000 for the amount taken. The court found that "[b]oth parties used

marital assets throughout their period of separation." John had exclusive use of the farm in 2012 and 2013 as well as the marital household. As a result, the court excluded from the marital assets the 2012 and 2013 crops, which were in storage at the time of trial. Those were determined to be John's property. Further, there was no indication that Dorothea fraudulently dissipated assets. *See Johnson v. Johnson*, 471 N.W.2d 156, 161 (S.D. 1991) ("If the [circuit] court finds . . . that [a spouse] fraudulently dissipated marital assets, they should be included in the martial estate and charged against [that spouse].")). The circuit court did not abuse its discretion by not including in the marital estate an amount that no longer exists.

*Cash inherited from John's mother*

[¶13.]     Similar to the first issue above, John contends that he should have been given a credit in the amount of $91,296 because his mother bequeathed this amount to him. John's mother passed away in 2007, years before the parties' separation. The court found that the parties spent the amount inherited to pay debts and purchase a family vehicle. The parties also set $15,000 aside for the children. The court noted that the money was not a marital debt that the parties needed to repay to the estate of John's mother. It further found that there was "no evidence that the money was under John's exclusive control and possession." John asserts that Dorothea did not have "anything to do with the acquisition of this money, and she certainly did nothing to add to it." John's contention is again premised on the notion that inherited assets are ipso facto *excluded* from marital assets. As addressed above, our cases clearly state otherwise. *See Billion*, 1996

S.D. 101, ¶ 20, 553 N.W.2d at 232. As a result, the court did not err when it did not grant John a credit in the amount of the inheritance.

*Child Support*

[¶14.] Lastly, John asserts that the court erred when it established a child support obligation for him. The parties have agreed to share custody of the children. Because the parties share custody, John contends that they should both "be required to devote equal time and talents to earning a living[,]" and he should not be penalized for earning more than Dorothea. The court found that the children's needs were met during the separation of the parties. During the separation, John was not paying child support. By extension, John argues that it is clear error to award child support now if the children were adequately provided for without his child support before the divorce but after separation—essentially that the court should assume that the children will continue to be adequately provided for after divorce as they were during the separation. "The court is required to set child support obligation based on an income schedule established by the Legislature." *Hill*, 2009 S.D. 18, ¶ 6, 763 N.W.2d at 822; *see also* SDCL 25-7-6.2. Where the parties, as here,

> have agreed in writing to a detailed shared parenting plan which provides that the child will reside no less than one hundred eighty nights per calendar year in each parent's home, and that the parents will share the duties and responsibilities of parenting the child and the expenses of the child in proportion to their incomes, and the shared parenting plan has been incorporated in the custody order, the court may, if deemed appropriate under the circumstances, grant a cross credit on the amount of the child support obligation based on the number of nights the child resides with each parent.

SDCL 25-7-6.27 (2013).[2] Accordingly, the court exercised its discretion and did determine the support obligation based on a shared parenting cross credit calculation. In light of the statutory guidelines for support, John's arguments are meritless. *See Thomas v. Hague*, 2002 S.D. 12, ¶ 11, 639 N.W.2d 520, 523 (Agreement by the parties to "permanently and irrevocably waive[] child support is contrary to . . . public policy" and therefore invalid). The court did not abuse its discretion by ordering child support. We affirm.

*Motion for attorney fees*

[¶15.]      We grant Dorothea attorney fees in the amount of $4,875, as requested pursuant to SDCL 15-26A-87.3.

[¶16.]      GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.

---

2.    The Legislature has since amended this statute. 2015 S.D. Sess. Laws ch. 147.